Brown, J.
 

 This is an appeal by one of the defendants in the court below, A. J. Rabinowitz, from a final decree in favor of the complainants, E. D. Keefer and Roma T. Raine, after hearing on bill and ánswer, cancelling certain deeds as a cloud upon the title of the complainants.
 

 The material facts are set forth in the final decree, which reads as follows:
 

 “The above entitled cause coming on regularly to be heard on this day", and it appearing that the bill, of complaint and the answer of the defendant A. J. Rabinowitz both show the samé facts relative to'the state of the title to the property involved herein, the cause was heal'd hpon the bill and answer by agreement of counsel for complainants and for the said defendant, and after argument of counsel and due consideration, counsel for said parties agree and the court finds the facts to be:
 

 
 *1725
 
 “1. That the decrees
 
 pro confesso
 
 entered by the clerk against the defendants Jacob Edwards, individually and as trustee, Juliana S. Edwards, his wife, Charles E. Sumner, and Samuel C. Rudine, were regularly suffered and entered;
 

 “2. That the complainants, E. D. Keefer and Roma R. Raine, and the defendant A. J. Rabinowitz claim title to the property hereinafter described, from the same common source, that is, from the defendant Jacob Edwards;
 

 “3. That in September, 1902, the said Jacob Edwards, a widower, transferred all his right, title and interest in said lands to Leslie N. Wilkie, by quit-claim deed duly recorded in January, 1903; that thereafter said Leslie N. Wilkie executed and delivered an instrument of conveyance of said lands to John A. Graham, which instrument was duly recorded in 1904; that thereafter said John A, Graham executed and delivered an instrument of conveyance of said lands to A. W. Gilchrist, which instrument was duly recorded in 1904; that thereafter said A. W. Gilchrist executed and delivered an instrument of conveyance of said lands to E. M. Putman, which instrument was duly recorded in 1905; that thereafter E. M. Putman and wife transferred their interests in said lands to W. H. Frazier, by quit-claim deed duly recorded in 1908, subject, however, to a mortgage duly recorded, in favor of Barnes & Jessup Company, a corporation; 'that thereafter, said W. H. Frazier, by deed duly recorded in 1910, conveyed said lands to Lura J. Putman; that thereafter, said Barnes-Jessup Company foreclosed said mortgage and said lands were conveyed by John W. Burton, Special Master, to said Barnes-Jessup Company, by special master’s deed duly recorded in 1910; that thereafter, Southern Naval Stores Company, a corporation, as successor to said Barnes-Jessup Company, conveyed said lands by deed duly recorded in
 
 *1726
 
 1913, to Telfair-Stockton Company, a corporation; that thereafter E. B. Wells, as Receiver for said Telfair-Stockton Company, conveyed said lands to S. F. Coventry, by deed duly recorded in 1924; that thereafter, in December, 1924, said S. F. Coventry, joined by his wife, conveyed an undivided one-half interest in said lands tó Harry N. Kellam, by deed duly recorded in June, 1925; that on December 9, 1924, said S. F. Coventry and wife conveyed an undivided one-half interest in said lands to J. Wesley Coleman and Clarence 0. Coleman, by warranty deed duly recorded in March, 1925; that in April, 1925, J. Wesley Coleman quit-claimed an undivided one-fourth interest in said lands to Clarence 0. Coleman, which instrument was duly recorded in April, 1925; that thereafter, on July'll, 1925, said Harry N. Kellam conveyed by warranty deed an undivided one-half interest in said property to the complainants, E. D. Keefer and Roma T. Raine, which deed was duly recorded in July, 1925; that on July 6, 1925, said Clarence 0. Coleman conveyed by warranty deed an undivided one-half interest in said lands to the complainants, which deed was duly recorded in July, 1925;
 

 “4. The court further finds, that in the year 1892, said Jacob Edwards duly conveyed said lands by warranty deed, to Charles E. Sumner; that in .1916, said Charles E. Sumner executed and delivered a warranty deed of said lands to Samuel C. Rudine; that in August, 1925, said Samuel C. Rudine executed and delivered a warranty deed of said lands to the defendant A. J. Rabinowitz; that these three last mentioned warranty deeds, though regular in other respects, were not recorded until August, 1925, after the recordation of the deeds of complainants from their immediate grantors; that the said lands are wild and unimproved, and unoccupied;
 

 
 *1727
 
 “5. From such facts, the Court being of opinion and finding the law to be that the complainants, claiming immediately under warranty deeds, but remotely under the quit-claim deed from Jacob Edwards to Leslie N. .Wilkie, executed after, but recorded before the original warranty deed from Jacob Edwards under which the defendant Rabinowitz claims, are
 
 Iona fide
 
 purchasers of said lands, without notice of the claims of said defendant and his predecessors in title, Sumner and Rudine, and that complainants, as such, are entitled to the protection of the recording acts as against said prior warranty deed from Edwards to Sumner; and that said warranty deeds from Edwards to Sumner, from Sumner to Rudine, and from Rudine to the defendant Rabinowitz, are clouds upon the title of the complainants, and should be cancelled as such; It is, therefore, ordered, adjudged and decreed as follows:
 

 “1. That the decrees
 
 pro confesso
 
 entered against the defendants Jacob Edwards, individually and as trustee, Juliana S. Edwards, his wife, Charles E. Sumner, widower, and Samuel C. Rudine, a single man, are hereby severally confirmed ;
 

 “2. That the complainants, E. D. Keefer and Roma T. Raine, own and have legal title in fee. simple to the lands described as against defendant, as follows, to-wit:
 

 “South Half (S%) of Section Twenty-seven (27), Township Forty-one (41) South, Range Twenty-three (23) East, in Charlotte County, Florida;
 

 “3. That the rights, claims, interests, titles and claims of title of the defendants Charles E. Sumner, Samuel C. Rudine, and A. J. Rabinowitz, derived through or under the said deed of Jacob Edwards, made in 1892 to said Charles E. Sumner, and through the said deed of Charles E. Sumner to Samuel C. Rudine, and the deed of. said Rudine to the defendant Rabinowitz, recorded in August,
 
 *1728
 
 1925, are, severally, hereby cancelled as clouds upon the said title of said complainants, and the clerk is directed to make notations accordingly on the records of said instruments; and that the title of the said complainants to said lands, in fee simple, is forever quieted and confirmed against, the said defendants, Charles E. Sumner, Samuel C. Rudine, and A. J. Rabinowitz, and that said defendants and each of them are forever enjoined and restrained from setting up or attempting to set up, asserting or attempting to assert, any title, right, or claim against the title of said complainants hereby quieted.
 

 “4. The defendant Rabinowitz pay costs herein, taxed at $...........
 

 “DONE AND ORDERED, at Punta Gorda, Florida, this June 21st, 1928.
 

 “GEORGE W. WHITEHURST,
 

 “Circuit Judge.”
 

 The bill alleged that before purchasing the property complainants had the public records examined by competent and experienced attorneys and that when they purchased and acquired their warranty deeds to the land, paying a valuable .consideration therefor, they were entirely without notice, either actual or constructive, of the deeds under which Rabinowitz claims, or of any adverse claim to the property by any of the defendants.
 

 The facts of' this case are essentially the same, so far as the principle here involved is concerned, as were the facts alleged in the bill upon which the recent case of Rabinowitz v. Houk, 129 So. R. 501, was based, except that in the latter case the complainant, in addition to tracing his title back through various warranty deeds to L. N. Wilkie, who held under a quit-claim deed from Jacob Edwards, also claimed under a tax deed to Robert J. Edwards, who
 
 *1729
 
 also conveyed to said Wilkie. This case should therefore be affirmed, upon the authority of Rabinowitz v. Houk,
 
 supra,
 
 or the latter case should be overruled. In view of the very able opinion of Mr. Justice Ellis in the case at bar, the writer has made a re-examination of the ease of Rabinowitz v. Houk, with the result that he is more than ever convinced of the soundness of the conclusions reached in that case.
 

 The statute involved in this case, originally adopted in 1828, now appearing as Section 5698 Comp. Gen: Laws, provides that “No conveyance, transfer or mortgage of real property, or of any interest therein, nor any lease for a term of one year or longer, shall be good and effectual in law or equity, against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law”—etc.
 

 It was early decided by this Court that, as between the parties, an unrecorded deed was valid. Stewart v. Mathews, 19 Fla. 752.
 

 In Snow v. Lake, 20 Fla. 656, this Court adopted the rule, already in force in some of the States, that a grantee in a quit-claim deed could not be a
 
 bona fide
 
 purchaser without notice within the meaning of the recording acts. This construction of the statute has been consistently followed by this Court since that time, but so far as I have been able to find it has not been extended in its operation beyond the immediate grantee in a quit-claim; nor do I think that logic or reason requires its extension. To further extend the rule would in effect amount to the adoption of a new rule, which new rule would, to my mind, work great injustice and hardship, as is illustrated by the facts in Rabinowitz v. Houk, as well as in the present case. It may be that, under the doctrine of
 
 Stare decisis,
 
 it is better in many instances to stick to an old rule, especially in eases
 
 *1730
 
 where the old rule has become a rule of property, than to adopt a new rule, even though the new be better founded in reason than the old. But the case of Rabinowitz v. Houk did not set aside the old rule. It merely restricted it strictly within the limits .to which it had been previously applied by this Court. When it comes to the adoption of a new rule of statutory construction, or when an effort is made to extend an old rule beyond the limits hitherto recognized, the courts may well consider the logic, reason, justice and wisdom, as well as the soundness of the public policy involved, in the step they are about to take.
 

 If the question decided in Snow v. Lake was now being presented for the first time, the writer is frank to say that he would consider it a very debatable question. With all due deference, candor compels me to say that I am doubtful of the wisdom of the rule of statutory construction therein adopted, for the reasons so ably pointed out in the opinions of Justices Field, Brewer and Gray respectively in the three decisions of the Supreme Court of the United States cited in Rabinowitz v. Houk, and the opinion of Justice Sanborn in Boynton v. Haggart, 120 Fed. 819, as well as for the reasons set forth in 27 R. C. L. 731-733 and cases cited. The statute says nothing about purchasers under quitclaim deeds. It purports to protect as against unrecorded deeds all subsequent purchasers for a valuable consideration and without notice,- with qualification. To arbitrarily assume by way of a rule of statutory construction that in no case can a purchaser who takes by quitclaim deed be a
 
 bona fide
 
 purchaser for value and without notice, without regard to the facts of the particular case, is in my humble judgment going too far. However, though the decisions on the subject in other jurisdictions are various and conflicting, the rule adopted in Snow v. Lake has been so long recognized in this State, having become in a
 
 *1731
 
 way a rule of property, it should doubtless continue to be followed by the courts, leaving any possible change therein to legislative action. But I am constrained to believe that the rule thus adopted in Snow v. Lake should be strictly confined within the limits stated in that case; that is, it should be restricted in its operation to the immediate grantee in a quit claim deed.
 

 But it is contended that the rule cannot be so confined, because, if the grantor in the quit-claim had previously conveyed his title to another, even though by an unrecorded deed, the title passed entirely out of him, and therefore the grantee in the quit-claim took no title whatever, nor did any of those claiming under him. This argument proves too-much if sound, it would operate likewise against a subsequent grantee by
 
 warranty
 
 deed from a grantor who had previously executed a warranty deed to some other person apd. which prior deed had been withheld from the public records and of which the subsequent grantee had no notice. It would practically nullify the recording statute. See Boynton v. Haggart, 120 Fed. 819. Furthermore, this argument fails to give full force and effect to the significant language of the statute, which is that “No conveyance * * * of real property * * * shall be good and effectual in law or equity against * * * subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law.” This means that a deed, though good
 
 inter partes,
 
 so long as it is withheld from the public records it is not good and effectual as against a subsequent purchaser for a valuable consideration and without notice; that, in effect, as to him it is ineffectual to convey the absolute title out of the grantor, by reason of the failure to record it.
 

 This very significant language of the statute was considered by .that justly distinguished jurist Mr. Justice
 
 *1732
 
 Wescott, in his opinion in Emerson v. Ross, 17 Fla. 122, 134-135, in which case this Court held that the recorded deed of an administrator upon a- sale' of the lands of a deceased intestate for value and without notice, vested a good title as against a prior unrecorded deed of such deceased intestate. In the course of his opinion, Mr. Justice Wescott said:
 

 “We take it, therefore, that there is no difference in principle between such a deed by an heir and such a deed by an administrator. Some of the cases upon this subject hold that the second deed is inoperative, because, in the view they take of it, after the first deed nothing was left to descend to the heir, or to pass as an asset to the administrator. We do not think this is correct, for the reason that
 
 an unrecorded deed does not, under the law, vest an absolute estate. Under the recording statutes., the absolute title rests with the grantor in-abeyance, and does not irrevocably pass to the grantee until the deed is recorded. There is such an estate left in the grantor as, upon the recording of a subsequent conveyance to a bona fide purchaser for value without notice, divests the entire estate passed by the prior unrecorded deed. If the intestate were alive, his second deed to such a purchaser for value would pass the estate.
 
 Does the estate upon his death pass absolutely to the first grantee! Unquestionably not, for what he has goes either to the heir or administrator. The statutes of descents and distribution direct nothing of the kind, upon the death of the intestate, his heir, or in the absence of debts, his administrator, viewed in reference to the probate court, upon exhaustion of personal assets, stands according to the true intent and meaning of the statutes controlling the subject of intestate estates and descents, in the same
 
 *1733
 
 place as the intestate. The administrator is his legal representative, with defined powers, and, so far as this matter is concerned, the power and estate which 'existed, in the intestate before his death passes to his administrator, acting under the order of a court having jurisdiction.
 

 “The estate or power existing in the grantor where there is an unrecorded deed, must have either ceased to exist or have gone to the heir or administrator. There is nothing from which it can be inferred that the unrecorded deed by the death of the intestate became of any greater force or effect. Looking to the intention and object of the Legislature in passing .the recording statutes, it is clear that the evil which they intended to remedy attaches as well to apparent ownership in the heir or administrator, as in the deceased intestate when alive.
 
 The object of this statute is to make patent, to disclose to the world the holder of the legal title, in order that purchasers for value might be protected against the secret deeds of the grantor, and the law protects the party who expends Kis money on the basis of this apparent ownership.
 
 In the case of his death, his heir or his administrator, with a decree of the court authorizing a sale, is the apparent owner of the legal title, and it is equally as. important and equally as just that the public should be allowed'to deal with them as with the original grant- or if living. The cases upon this subject (15 Ill., 158; 2 S. & R., 44; 3 Yerg., 346; 39 Mo., 110; 4 Mon., 120; 6 B. Mon., 531; 24 Conn., 211; 46 Mo., 239,) are conflicting, but we think that the doctrine we have just stated is correct.” (Italics supplied.)
 

 The ease just quoted was cited with approval in Ballard v. Lippman Bros., 32 Fla. 481, 487, 14 So. R. 154; and
 
 *1734
 
 in Lusk v. Rul, 36 Fla. 418, 425, 18 So. R. 582. See also Thompson on Real Property, Vol. 5, 226, and Boynton v. Haggart,
 
 supra.
 

 In addition to this, we have held in several cases that a party who has withheld his deed or mortgage from the record, thereby allowing a subsequent party without notice to be misled into taking substantial steps relying upon the record as it existéd, would be estopped to question the rights of such subsequent party. See Hunter v. State Bank of Florida, 65 Fla. 202, 61 So. R. 497, 499; and other cases cited in the opinion in Rabinowitz v. Houk,
 
 supra,
 
 and also the recent case of Van Eepoel Real Estate Co. v. Sarasota Milk Co., 129 So. R. 892.
 

 I think this principle applies here. Keefer and Raine were purchasers for a valuable consideration and without notice. Before taking their warranty deeds, they employed competent attorneys to search the records. Nothing derogatory to the title they were buying appeared thereon. It is admitted ■ they had no actual notice. What more could they do? Several weeks after they had received and recorded their deeds Rabinowitz placed his deeds on record, one of which had been made to him after the deeds to Keefer and Raine had been recorded, and the other two had been withheld from the records for nin'e and thirty-three years .respectively. Thus Rabinowitz, and those under whom he claimed, had by their conduct permitted the record to mislead Keefer and Raine, and must bear any consequent loss rather than- those who in good faith had acted with reference to the records as being in accord with the actual facts, as they had the right to do under the statute.
 

 Our conclusion therefore is that the decree of the court below should be affirmed.
 

 Affirmed.
 

 
 *1735
 
 Terrell, C. J., and Whitfield and Strum, J. J., concur.
 

 Ellis and Buford, J. J., dissent.