95 So.2d 506 (1957)
William F. CHATLOS and Alice Chatlos, his wife, Appellants,
v.
Ronald McPHERSON, Appellee.
No. 28472.
Supreme Court of Florida, Division A.
May 29, 1957.
*507 Anderson & Nadeau, Miami, for appellants.
Donald G. Miller and Paul J. Stichler, No. Miami Beach, for appellee.
THORNAL, Justice.
Appellants, Chatlos, seek reversal of a final decree quieting title to a parcel of land in favor of the appellee, McPherson.
The determining point is the effect of Section 695.01, Florida Statutes, F.S.A. (the recording statute), upon the ultimate title acquired by the contesting parties.
Appellee, McPherson, filed a complaint to quiet the title to a number of lots. Appellants, Chatlos, were among the defendants. Chatlos filed a cross-complaint asking that his title to Lot 8, Block 51, be quieted. The deraignment of the title of the respective parties is important. On December 16, 1925, Florida Cities Finance Company conveyed said Lot 8 to one Marley. The deed was not recorded until December 15, 1927. By deed recorded April 16, 1945, Marley conveyed to McPherson. Chatlos deraigns his title through a sheriff's deed. On the basis of prior judgments recovered against Florida Cities Finance Company execution was issued on June 16, 1926. A sheriff's deed, based on this execution and pursuant to notice of sale, was issued to a predecessor in the Chatlos title by deed recorded December 18, 1944. Chatlos acquired the title through subsequent conveyances. The significant dates are those relating to the date of the recording of the deed to Marley, which was December 15, 1927, as against the date of the execution based on prior judgments, which was June 16, 1926. A judgment had been recorded on May 24, 1926.
Another fact actually constitutes the basis of the McPherson claim to a superior title. On October 24, 1925, a prior blanket mortgage encumbering the entire subdivision was partially released by the mortgage holder to Florida Cities Finance Company. *508 This partial release made no reference whatever to the claim of an interest of any other person. Nonetheless, McPherson contends that the partial release to Florida Cities Finance Company, the judgment debtor, should have put the judgment creditor on implied actual notice that the finance company had contracted to sell the lot and that if the judgment creditor had pursued an investigation and made inquiry of the finance company, he would have obtained this information.
The Chancellor agreed with McPherson and quieted the title to the lot in dispute in his name. Reversal of this decree is here sought.
The appellants contend that when the prior judgment was recovered and execution thereon issued on June 16, 1926, there was no recorded notice whatever of the claim of anyone other than the judgment debtor, Florida Cities Finance Company. Therefore, it is contended by appellants that the recording of the judgment and the issuance of execution before the subsequent recording of the Marley deed estops Marley and those claiming under him from claiming a superior title to holders under the sheriff's deed.
McPherson, the appellee, contends that our recording statute binds a party to take notice of the matters shown by the record and such other facts as would be learned upon making inquiries suggested by the record. He relies on the proposition that the record here showing the partial release of the mortgage was sufficient to put the judgment creditor on implied actual notice of adverse claims that would have been revealed had inquiry been pursued. This is so, he contends, even though the partial release made no reference to any interest other than that of the mortgagor and mortgagee.
In entering the final decree in favor of appellee, McPherson, the Chancellor relied upon our opinion in Hull v. Maryland Casualty Company, Fla. 1954, 79 So.2d 517. Although the rule of law announced in that opinion is the one contended for by the appellee, an examination of the factual situation to which the rule was applied would seem to establish a clear line of distinction between that case and the one before us.
In the Hull decision although the ultimate deed relied upon by Hull, who was successful in defending against the judgment, was not recorded until after the judgment itself, there was of record prior to the judgment an agreement to sell executed by the judgment debtor in favor of Hull's predecessor. The record likewise revealed a pledge of this agreement to sell in the form of a mortgage executed by the judgment debtor and recorded prior to the judgment. The mortgage specifically described the recorded agreement to sell. In the Hull case also the partial release of the property from the prior blanket mortgage was recorded and the agreement to sell executed by the judgment debtor was thereupon re-assigned to it. All of these documents were recorded prior to the recording of the judgment. In the Hull decision we held that the numerous documents of record prior to the judgment, all of which reflected and specifically pointed to the claims of prior grantees from the judgment debtor, were adequate to require the judgment creditor to pursue an investigation independent of the record itself. Under such circumstances we held that the judgment creditor was not justified in relying entirely on the constructive notice supplied by the record. On the contrary, the record was literally permeated with signals that someone other than the judgment debtor had an interest in the property. These signals we held imposed a duty to make an inquiry which resulted in implied actual notice of the claims of third parties.
In the case before us no such situation obtained. The only document relied upon by the appellee to establish notice of his alleged superior title was the partial release *509 of the lot from a prior blanket mortgage. Florida Cities Finance Company, the judgment debtor, had executed the mortgage and the partial release merely relinquished this specific lot from the lien of the mortgage. There was nothing whatever in the release or in any other documents of record suggesting the interest of a third party. So far as the record in this case reveals, there was nothing in its content that would impel any reasonable person to make further inquiry.
Appellee, by his brief, asserts that if inquiry had been made of Florida Cities Finance Company, the judgment debtor, the interest of the true owner of the lot would have been made known. The point in reply is that there was no suggestion on the record in any form or nature that any further inquiry was necessary. Appellee tenders the nebulous viewpoint that "it is common knowledge" that when a land developer in the business of selling lots obtains a partial release from a blanket mortgage, he does so for the purpose of selling the particular lot so released. He then reasons that the partial release supplemented by so-called "common knowledge" should have impelled the judgment creditor to pursue further inquiry.
We cannot indulge in such an extensive assumption as to the significance of so-called "common knowledge." Certainly, it does not necessarily follow that the partial release of a mortgage is necessarily preliminary to an immediate or impending sale of the property released.
The pertinent portion of Section 695.01, Florida Statutes, F.S.A. is as follows:
"Conveyances to be recorded
"No conveyance, transfer or mortgage of real property, or of any interest therein, nor any lease for a term of one year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; * * *"
This statute has been construed to mean that one who records evidence of his title subsequent to grantees, mortgagees or creditors who have relied upon a prior record title is estopped to assert or enforce his claim as against those who have relied upon the prior record. Unless the record contains such information as would lead a reasonable man to make inquiry outside of the record sufficient to lead to information that would show the interest of the subsequent record claimant, it appears to us that in order to charge a person with notice of facts discoverable by reasonable inquiry, the circumstances should be such, or the record indications should be of a nature, that inquiry outside of the record becomes a duty and the failure to make such inquiry would constitute a negligent omission. In order to charge a person with notice of a fact which he might have learned by inquiry, the circumstances known to him must be such as should reasonably suggest inquiry and lead him to inquiry. Sapp v. Warner, 105 Fla. 245, 141 So. 124, 143 So. 648, 144 So. 481; Rinehart v. Phelps, 150 Fla. 382, 7 So.2d 783; Farish v. Smoot, Fla. 1952, 58 So.2d 534.
We find no such circumstances or factual data appearing in this chain of title as would put upon appellants' predecessor the duty of pursuing an investigation extrinsic of the public records. The judgment having been recorded and execution issued long prior to the date of the recording of the deed to McPherson's predecessor and there being nothing of record to suggest the interest of any person other than the judgment debtor, upon whose title McPherson relies, we are compelled to hold that under our recording statute above cited, McPherson is now estopped to assert his claimed title against the claimant under the sheriff's deed founded on prior judgment and execution. We note that the *510 record fails to reveal any evidence that either party is in possession of the lot involved.
The decree is reversed and the cause remanded for such further proceedings as may be consistent herewith.
TERRELL, C.J., and THOMAS and ROBERTS, JJ., concur.