139 So.2d 734 (1962)
Walter J. BUCK, Appellant,
v.
William H. McNAB, Jr., et al., Appellees.
No. 2235.
District Court of Appeal of Florida. Second District.
March 21, 1962.
Rehearing Denied April 17, 1962.
John I. Jacobson of McCune, Hiaasen, Crum & Ferris, Fort Lauderdale, for appellant.
Norman C. Roettger, Jr., of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellees.
WHITE, Judge.
Appellant Walter J. Buck is aggrieved by a final decree dismissing his complaint *735 for specific performance of a contract entered into August 4, 1955 by which he purchased two vacant lots from William H. McNab, Sr., now deceased.
In 1948 William H. McNab, Sr. conveyed two lots each to his minor grandsons, William H. McNab, III and Robert Alan McNab, in consideration of love and affection. The deeds, which were never recorded, were delivered in the presence of the boys' parents. Each deed described one of the two lots here involved and one additional lot. Several years later William H. McNab, Sr., in his own name, sold two of the lots aforesaid and caused the proceeds to be placed in accounts for the benefit of the grandsons. These lots are not here involved.
On August 4, 1955 William H. McNab, Sr., again in propria persona, entered into a written contract with plaintiff-appellant Walter J. Buck by which the latter purchased the remaining two of the four lots which previously had been conveyed to the McNab grandsons by the unrecorded deeds. The consideration was $5,000.00. Walter Buck made a down payment of $750.00 and, upon payment of the balance less commission, was to receive conveyance of title at a closing within seven months but not before March 1, 1956. On February 15, 1956 William H. McNab, Sr. died testate and William H. McNab, Jr. was appointed and acted as executor until his discharge on September 26, 1957. Neither the decedent's contract with Walter Buck nor the lots themselves were inventoried and included in the administration of the estate; and no claim was filed against the estate with reference to the contract.
Following the death of William H. McNab, Sr. it clearly appears that William H. McNab, Jr. and Walter Buck intended to conclude the sale of the lots according to the tenor of the contract. Walter Buck testified that he was at all times ready, willing and able to perform as purchaser. William McNab, Jr. likewise attested his willingness to close the transaction until it became "complicated" in 1958.
Despite the delay there was no hint of a possible repudiation of the contract until April 28, 1958 when William McNab, Jr. wrote to Walter Buck noting the lapse of time and charging that Walter Buck had made no serious attempt to close the deal. The letter contained an ultimatum that the deal must be closed within ten days. In the same letter, however, William McNab, Jr. stated for the first time that the lots were the property of the decedent's grandsons and were, in effect, of no concern to the decedent's estate or the beneficiaries. It is notable in this connection that on the date of said letter William McNab, Jr. had not caused the abstract of title to be prepared, although he knew that Walter Buck was applying for a title commitment for title insurance purposes. In the meantime Walter Buck had caused the lots to be cleared and improved by the planting of trees, while William McNab, Jr. had paid the taxes.
The wife of Walter Buck, who acted as agent and intermediary between the parties in the purchase and sale of the lots, testified that she made repeated inquiries of William McNab, Jr. as to how the estate was progressing and was told that they would be notified when the closing could be had. She and the plaintiff both testified that prior to the letter of April 28, 1958 they had not been informed by anyone that the lots did not belong to William McNab, Sr. She also testified that after the death of William McNab, Sr. she felt it was up to the representatives of his estate to arrange matters so that the deal could be closed. She was asked on cross examination to explain the delay in filing suit. She replied:
"A Well, in the first place, I was very fond of this particular branch of the McNab family and I realize they were in deep sorrow. I was aware that they owned a great deal of property and it would probably take quite a while to have the estate settled, how long I didn't know."
She further testified that on or about May 8, 1958, after the April 28th letter of McNab, Jr., she attended a purported closing *736 of the deal but without result as William McNab, Jr. was not ready to perform.
The apparent reason for the delay by William McNab, Jr., and his final refusal to follow through, was his ultimate conclusion that the lots actually belonged to his two sons and could not be conveyed by him as their representative; that he would be required to qualify as their property guardian and the court probably would not approve the sale as being in the best interests of the wards because of the increased value of the lots since the death of William McNab, Sr. He attempted to return the $750.00 down payment, but it was rejected by the plaintiff. Finally, on November 1st, 1958, William McNab, Jr. refused to take any steps whatsoever to close the deal. He wrote in pertinent part as follows:
"Dear Mr. & Mrs. Buck,
"Since we cannot give you a good, clear title to Lots 16 & 17 Block 7 of Pinehurst we have definitely decided not to sell these two lots at this time and Mr. Bart Sullivan said that he notified you of our decision. When our two sons have both become of age, which will be the latter part of 1964, we will have the lots cleared legally in their names and a good, clear title can then be obtained. When this happens our sons will decide for themselves whether or not they want to sell the lots or keep them for their own use. The decision will be left entirely up to both of them.
* * * * * *
"We regret very much that we could not close your purchase transaction on the two lots but with the title so mixed up and two minor children involved it made everything very complicated as you both know and we hope you will try to understand the predictament it put us in and the decision we made."
On April 29, 1959 Walter Buck filed suit for specific performance. The cause was heard on the complaint and the answers of the several defendants after William McNab, Jr. was appointed guardian ad litem for the minor defendants. The defendants were William McNab, Jr. and Marjorie McNab, his wife, Dora H. McNab, the widow of William McNab, Sr., who was a residuary beneficiary and had not elected to take dower, Gladys Walker as a residuary beneficiary, William McNab, Jr., the two grandsons, and William McNab, Jr. as their guardian ad litem. The answers pleaded the defenses of laches and failure of the plaintiff to file a claim against the estate of William McNab, Sr. pursuant to Florida Statutes § 733.16 F.S.A.[1] The chancellor, in denying specific performance, set forth findings that the plaintiff had slept on his rights and had not complied with the non-claim provision of the Probate Law, supra. The plaintiff's down payment of $750.00 was ordered returned to him with 6% interest from date of payment.
The plaintiff, by assignment on appeal, submits that the chancellor committed prejudicial error (1) in holding that the plaintiff was required to comply with Section 733.16 F.S.A., supra, as a condition precedent to suit, (2) in holding that the plaintiff was precluded by laches and (3) in failing to hold that the defendants were estopped *737 to deny the binding effect of the contract of sale. These will be treated in numerical order.
Tingle v. Hornsby, Fla.App. 1959, 111 So.2d 274, 276 explains the significant doctrine of equitable conversion as follows:
"It has long been the law of this jurisdiction that the vendor's act in executing a contract to convey the legal title to property upon the payment of an agreed purchase price constitutes the vendee as the real beneficial owner, legal title remaining in the vendor as trustee with the obligation to convey upon compliance with the terms of the contract. Under the doctrine of equitable conversion, the vendor's interest thereupon becomes personalty
The doctrine is similarly stated in 12 Fla. Jur., Equitable Conversion, § 6:
"Under ordinary common law principles, the doctrine of equitable conversion becomes operative upon the execution of an agreement to convey title to realty. The vendee immediately becomes the beneficial owner, and the vendor retains only naked legal title as security for payment of the purchase price. In such a case, the interest of the vendee under the contract is regarded as realty so that he will be entitled to all benefits attaching to the property and, on the other hand, he must bear all losses, unless the contract shows a contrary intention. The vendor's interest constitutes personalty and on his death is distributable as such."
See also Hull v. Maryland Casualty Company, Fla. 1955, 79 So.2d 517; Michaels v. Albert Pick & Co., 1947, 158 Fla. 877, 30 So.2d 498.
Thus the plaintiff's claim in the instant case is in rem in nature and, as such, is governed by the rule in Hodges, as Executrix, v. Logan, as Executrix, Fla. 1955, 82 So.2d 885, wherein the Supreme Court of Florida held that the plaintiff's claim of equitable title to specific property was not affected by failure to file a claim against the decedent's estate represented by the defendant executrix. The court said at page 887:
"We point out that petitioner seeks to establish her equitable rights in specific identifiable property which is easily separable from the corpus of the William J. Priest estate. * * *"
The court at page 888 then quoted 33 C.J.S. Executors and Administrators § 118, page 1073:
"Property which a decedent held as trustee or in any other fiduciary capacity does not at his death properly constitute part of his estate; title to the property may pass to decedent's heirs or personal representatives, but it does so clothed with the fiduciary obligation. Such property cannot be charged with the debts of decedent, or with the expense of administering the estate. The fact that the fiduciary treated the property as his own does not alter the rule; so decedent's wrongful act in selling trust property does not make the proceeds of the sale part of his estate."
and the court continued on p. 888:
"* * * In fact, the rule announced by this opinion is greatly strengthened by a consideration of Section 733.19, Florida Statutes, F.S.A. * * * which Mr. Redfearn in his comprehensive work on Wills and Administration of Estates in Florida (2nd Edition) at page 496, interprets to mean that `* * * claims to specific property, real or personal, may be enforced as to the property encumbered or claimed, whether or not claims based on them are filed against the estate'.
"We therefore hold that under the law of the case obtaining in the matter before us * * * the petitioner is entitled to have her claim to the specific property involved considered by *738 the Chancellor as an equitable claim against such specific property even though there has been no effort to meet the requirements of Section 733.16, Florida Statutes, F.S.A."
To the same effect see Cooey v. Cooey, 132 Fla. 716, 182 So. 202; Tibbetts Corner v. Arnold, 108 Fla. 239, 146 So. 218; 34 C.J.S. Executors and Administrators § 398.
Having determined that the plaintiff here was not barred by non-claim, we come to consider whether or not he was barred by laches. "The question of laches turns not merely upon the lapse of time, but also upon the nature and evidence of the rights involved and other relative circumstances occurring during the lapse of time." Shirley v. Lake Butler Corporation, Fla.App. 1960, 123 So.2d 267, 271. It is the import of the defendants' contention that the deal in this case was delayed to their detriment by inaction of the plaintiff. The plaintiff insists to the contrary that it was the defendant William McNab, Jr. who, as the seller's representative, refused to perform after a long period during which he recognized the contract as valid.
We are impelled to conclude that the onus of responsibility for the indirection, procrastination and ultimate repudiation which characterized this transaction rests, either directly or through representation, upon all the defendants. At the very outset William McNab, Sr.'s method of dealing with these lots was implicitly proscribed by law. Though his intentions were good, the prime responsibility for the unfortunate consequences should rest upon his succession unless Walter Buck had actual antecedent knowledge of the unrecorded deeds. Absent such knowledge the plaintiff was a purchaser who, in our opinion, was clearly without blame for the delinquencies disclosed by the record. The conclusion is that the essentials of the defense of laches were not established. 21 Fla.Jur., Limitation of Actions, § 94.
We are mindful that it was attempted on behalf of the defendants to charge the plaintiff with knowledge of the unrecorded deeds at the time he purchased the lots. The only testimony which conceivably could impute knowledge to the plaintiff was the following:
"Q [by defendants' attorney to defendant William McNab, Jr.]
All right. Now, do you know whether  Mr. Jackson asked if you had previously told any of the Bucks that your sons really owned these two lots, and you said your first communication was your letter of April of 1958. Is there any reason why you didn't earlier tell them about your sons owning the lots?
"A Well, after we came back from our vacation, I asked my father, we were discussing it, I said, `Now, you told Mr. and Mrs. Buck that these lots belonged to our sons, Henry and Allen.' He said, `I did tell them.' Those were his words." (Emphasis ours)
Counsel for the plaintiff objected and moved to strike the answer as hearsay and in derogation of the Dead Man's Statute.[2]
After some discussion with counsel the able chancellor indicated his thought that the door had been opened to the otherwise incompetent testimony. Even so, such testimony was far too tenuous to charge the plaintiff with knowledge of ownership other than in William McNab, Sr. Indeed consideration of the context of the record as a whole overwhelmingly negates any such knowledge on the part of the plaintiff.
Generally a purchaser of real property dealing with the record owner is protected and may rely upon the record in the absence of actual knowledge of an adverse unrecorded right, claim or interest or knowledge of some circumstance which would put him under duty to inquire. Stated conversely, under the recording statute, Florida Statutes § 695.01 F.S.A., grantees claiming *739 under unrecorded deeds are estopped to assert title as against subsequent purchasers or mortgagees for valuable consideration without notice. The recording statute is intended as a protection against secret deeds, and it has been held that as to a subsequent purchaser without notice an unrecorded deed is ineffective to convey title. Rabinowitz v. Keefer, 1931, 100 Fla. 1723, 132 So. 297. See also Chatlos v. McPherson, Fla. 1957, 95 So.2d 506; Hull v. Maryland Casualty Company, Fla. 1955, 79 So.2d 517; 28 Fla.Jur., Records and Recording, §§ 16, 31, 54.
Relief by way of specific performance is largely within the discretion of the chancellor, but this must be an enlightened discretion in which the conscience of the chancellor is "colored or tempered by the rules of law which constitute his guide and compass." In Martin v. Albee, 1927, 93 Fla. 941, 113 So. 415, 416, the court said:
"If the contract is definite as to terms and description of land, is mutual, supported by a consideration, and the vendee may not be amply compensated by damages at law for breach, and the contract is fair and reasonable in all its terms, he should not be denied the relief if he has complied with the requirements on his part to be performed or if the vendor has by his acts, declarations, or express waiver dispensed with such performance. * * *"
There appear in the instant case no intervening rights of innocent third parties, and we are convinced that the plaintiff should be granted the relief prayed. Assuming jurisdiction of the persons of all the defendants, the chancellor has authority to enter a decree fully honoring the commitments of the contract and determining the disposition of the proceeds of the completed sale, including the reimbursements of taxes chargeable to the plaintiff. Such decree may, by its terms, operate to vest title in the plaintiff as against the defendants and all others claiming by, through or under William H. McNab, Sr.
We note from the record that the sheriff's returns of service recite that the summons were served on the persons of the minors, William Henry McNab III and Robert Alan McNab, but there appears on the face of the returns no evidence of service upon their guardian or other person in whose care or custody they were. Florida Statutes § 47.23, F.S.A.[3] is still in effect and requires that, in addition to serving the minor himself, service shall also be had on his guardian or other person in whose care or custody he may be, and also on the guardian ad litem thereafter appointed to represent such minor unless such guardian voluntarily appears. There was sufficient compliance with the latter provision, but this does not obviate compliance with the additional requirement of service on the "guardian or other person in whose care or custody such minor may be * * *.". We are of the opinion that the validating provisions of Section 47.24 F.S.A. do not meet the objection here noted inasmuch as this cause is not as yet finally adjudicated.
Jurisdiction of the minors not having been acquired, according to the face of the sheriff's returns of service, the decree should not be entered as to them until jurisdiction is obtained in full compliance with *740 Florida Statutes § 47.23 F.S.A., supra. See Grimsley v. Rosenberg, 1927, 94 Fla. 673, 114 So. 553; Foster v. Thomas, Fla.App. 1959, 112 So.2d 33.
The decree appealed is reversed and the cause remanded for proceedings agreeable with the views and holdings herein set forth.
Reversed.
ALLEN, Acting C.J., and SMITH, FRANK A., Associate Judge, concur.
NOTES
[1] "(1) No claim or demand, whether due or not, direct or contingent, liquidated or unliquidated, or claim for personal property in the possession of the personal representative or for damages, including but not limited to actions founded upon fraud or other wrongful act or commission of the decedent, shall be valid or binding upon an estate, or upon the personal representative thereof, or upon any heir, legatee or devisee of the decedent unless the same shall be [filed in the prescribed manner] and no cause of action, at law or in equity, heretofore or hereafter accruing, including but not limited to actions founded upon fraud or other wrongful act or omission, shall survive the death of the person against whom such claim may be made, whether suit be pending at the time of the death of such persons or not, unless such claim be filed in the manner and within the said six months as aforesaid."
[2] Florida Statutes § 90.05, F.S.A.
[3] "The courts of this state shall obtain jurisdiction of minors when the original writ of subpoena in chancery or summons * * * in common law actions, as the case may be, is served by reading the writ or summons to be served to the minor to be served, and also to the guardian or other person in whose care or custody such minor may be, or by a delivery of a copy thereof to such minor and to his guardian or other person in whose care or custody such minor may be, and by further serving the writ or summons upon the guardian ad litem thereafter appointed by the court to represent said minor; provided, that service of process on the guardian ad litem may be dispensed with where such guardian ad litem voluntarily appears in any proceeding in which he may have been appointed to act as guardian ad litem for any minor."