In re Jack C. MAY and De Lena C. May, Bankrupt.

GROWTH PROPERTIES OF FLORIDA, LTD., Appellant,

v.

W. Kirk BROWN, Trustee, Appellee.

No. TCA 80–0995.

United States District Court, N. D. Florida, Tallahassee Division.

April 2, 1982.

L. Ralph Smith, Jr., Tallahassee, Fla., for appellant Growth Properties.

Neil H. Butler, Tallahassee, Fla., for Jack C. May and De Lena C. May.

W. Kirk Brown, Tallahassee, Fla., for trustee.

## ORDER

STAFFORD, Chief Judge.

This case is before the court on appeal from the final order entered by the Honorable N. Sanders Sauls, Bankruptcy Division, on September 3, 1980 granting summary judgment in favor of the defendant trustee. Upon review of the case and oral argument of counsel it is the opinion of this court that Judge Sauls' judgment should be affirmed.

It is uncontroverted that by reason of mutual mistake, Jack and De Lena May became record title holders to an undivided half interest in a 49% share of a real property lease. The lease assignment on record shows conveyance to "JACK C. MAY, individually and as General Partner for Growth Properties of Florida, Ltd., a limited partnership formed under the laws of the State of Florida, and DE LENA C. MAY, his wife, and GPF, INC., a Florida Corporation, General Partner of Growth Properties of Florida, Ltd." The parties agree that the signatories to the assignment intended conveyance solely to Growth Properties of Florida, Ltd. (Growth Properties) and not its individual partners. Appellant, Growth Properties, sought to reform the assign-

ment and asked the Bankruptcy Court to direct the Trustee to execute the documents necessary to release all claims by the bankruptcy estate of Jack C. May to the leasehold interest. The Bankruptcy Court denied the relief requested.

In his order granting summary judgment, Judge Sauls correctly explains that a trustee in bankruptcy appears in a dual role: (1) he is the successor to all the rights, title and interest of the bankrupt himself subject to all outstanding claims, liens and equities, and (2) he is a hypothetical judicial lien creditor of each variety enumerated in § 70(c).

Section 70(c) of the Bankruptcy Act provides

> c. The trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitation, statutes of fraud, usury, and other personal defenses; and a waiver of any such defense by the bankrupt after bankruptcy shall not bind the trustee. The trustee shall have as of the date of bankruptcy the rights and powers of (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists. If a transfer is valid in part against creditors whose rights and powers are conferred upon the trustee under this subdivision, it shall be valid to a like extent against the trustee....

The second sentence of § 70(c), the "strong-arm clause," gives the trustee the status of a judicial lien creditor. State law, in turn, defines the rights and powers conferred on the trustee by virtue of that status. *See*

*Ivey v. Transouth Financial Corporation*, 566 F.2d 1023 (5th Cir. 1978); *In re Ludlum Enterprises, Inc.*, 510 F.2d 996 (5th Cir. 1975); *Commercial Credit Company v. Davidson*, 112 F.2d 54 (5th Cir. 1940).

Appellant, Growth Properties, asserts that a trustee can exercise the strong-arm clause only in relation to property entering the bankruptcy estate under § 70(a). Section 70(a) provides

> a. The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located ...

Since the bankrupt Jack C. May lacked valid title to the property in question at the time of filing the petition in bankruptcy, the trustee can take no interest in the lease. The court is of the view that such a construction of the Act would make the strong-arm clause a nullity.

If the trustee can contest the ownership of only that property that the bankrupt himself can secure against third parties, the § 70(c) grant of all rights and powers of three different types of creditors as against third party interests is irrelevant. Section 70(c) would never come into play if § 70(a) resolved all questions of title. 4B, *Collier on Bankruptcy*, ¶ 70.48 (14th ed. 1978) notes that § 70(a)(5) on its face seems to give the trustee only the title of the bankrupt. However, "[s]ince in almost every case where the strong-arm clause of § 70(c) is useful to the trustee, the title of a bankrupt to the property in question is subject to the very lien or encumbrance which is sought to be avoided, giving the trustee *that* title only would aid him not at all." *Id.* at 583. "Section 70(c) does everything that section 70(a)(5) does and more besides." *Id.* at 586.

When initially introduced in 1910 as part of § 47(a)(2) of the Bankruptcy Act, the strong-arm clause was designed to strike

down secret liens and other transfers that prior to that time evaded the trustee's attack. *See Collier,* ¶ 70.47. Although the bankrupt has no claim of title on the date of bankruptcy, the creditor can nevertheless acquire a lien on the property by judicial proceeding on that date, if the bankrupt retains an interest on record.

The Florida recording statute, § 695.01 Florida Statutes (1979) provides

No conveyance, transfer or mortgage of real property, or of any interest therein, nor any lease for a term of one year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; . . .

Judge Sauls states that the objective state of the record determines the protection afforded creditors and bona fide purchasers under the statute. If a third party interest is unrecorded and there is neither evidence in the record chain of title nor possession of the property which would give rise to a duty to inspect or inquire, it cannot prevail. Additionally, Judge Sauls holds that it is irrelevant whether a judicial lien creditor actually relies on the record if that record reveals no third party interest. *See Growth Properties of Florida, Ltd. v. Jack C. May and De Lena C. May,* No. 78–7083–C, 13 (N.D.Fla. Sept. 3, 1980). Judge Sauls asserts that *National Bank of Arcadia v. Savarese,* 134 So. 501 (Fla.1931) is an aberration in Florida law. "[T]o the extent that the *Savarese* line of cases purports to alter the burden of proof from a consideration other than the reflection of the state of the record title it is submitted that such appears to be clearly erroneous." *Growth Properties of Florida, Ltd., supra,* at 21.

In *First National Bank of Arcadia v. Savarese, supra,* Nellie Savarese filed suit to reform a deed erroneously entered in the name of her husband, John Savarese. She sought to enjoin the Sarasota County Sheriff from selling the property in execution of a judgment held by the First National Bank of Arcadia against her husband. The lower court reformed the deed and entered judgment in favor of Nellie Savarese. The Florida Supreme Court affirmed as there was no showing that the First National Bank of Arcadia had extended credit to John Savarese in reliance on the fact that title to the property on which it levied was held by John Savarese at the time the bank extended credit. The Court held that the objective state of the record

may operate as an estoppel, where persons without actual knowledge and without circumstances to put them upon inquiry reasonably may have taken substantial steps relying upon the record, and those who by their conduct or neglect in permitting the record to mislead others must bear any consequent loss rather than the one who in good faith may have acted with reference to the record as being in accord with actual facts.

*Id.* at 503, citing *Hunter v. State Bank of Florida,* 65 Fla. 202, 61 So. 497, 499 (1913). The Court explains that "a distinction is generally drawn between a judgment creditor who extended credit and acquired judgment on the faith of the title to certain property being at the time of the extension of credit in the judgment debtor and a judgment creditor who extended credit without any such reliance." *Id.* at 504.

Despite Judge Sauls' conclusion to the contrary, this court does not find the Florida case law to be hopelessly irreconcilable. It is apparently still possible in Florida to reform a deed against a judicial lien creditor, without notice, who fails to rely on the record. *See Chatlos v. McPherson,* 95 So.2d 506 (Fla.1957); *Hull v. Maryland Casualty Co.,* 79 So.2d 517 (Fla.1954); *Michaels v. Albert Pick & Co.,* 30 So.2d 498 (Fla.1947); *Arundel Debenture Corporation v. Le Blond,* 190 So. 765 (Fla.1939); *Laganke v. Sutter,* 187 So. 586 (Fla.1939); *First National Bank of Arcadia v. Savarese,* 134 So. 501 (Fla.1931). *See also Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); *Zartman v. First National Bank of Waterloo,* 216 U.S. 134, 30 S.Ct. 368, 54 L.Ed. 418 (1910). The Bankruptcy Court cites a number of Florida cases both before and after *Savarese* for the proposition that

*Savarese* is bad law. This court's reading of those cases does not lead it to the same conclusion. The cases of *Lusk v. Reel*, 36 Fla. 418, 18 So. 582 (1895), *Mansfield v. Johnson*, 51 Fla. 239, 40 So. 196 (1906) and *Chatlos v. McPherson*, 95 So.2d 506 (Fla. 1957) all deal with purchasers at sheriffs' execution sales rather than with judicial lien creditors. In *Hull v. Maryland Casualty Company*, 79 So.2d 517 (Fla.1954) the Florida Supreme Court cited *Savarese* with approval and quieted title against a judgment creditor who levied after assignments of an agreement for deed were recorded but before the purchaser of land recorded his deed. Under Florida law

> A bona fide purchaser at an execution or judicial sale is entitled to the same protection under the recording law as is afforded to a purchaser at a private sale with reference to unrecorded instruments affecting the title to the property conveyed. Thus, in the absence of actual knowledge, an unrecorded instrument is invalid against him. Further, if the judgment creditor did not have actual or constructive notice of an unrecorded deed made by his debtor before the rendition of the judgment, any knowledge of the deed on the part of the purchaser at a sale in execution is immaterial.... A purchaser at an execution sale is, of course, on notice of interests that are of record and of the interest of a person who is sold in possession of the property sold.

28 Fla.Jur., Records and Recording Acts, § 64 (1968).

Likewise, the case of *Smith v. Pattishall*, 176 So. 568 (Fla.1937) does not preclude reformation of a deed against a judicial lien creditor. In a dispute between a judicial lien creditor and an unrecorded third party equitable interest in a deed to property, the Florida Supreme Court held

> The land here in question stood in the name of the judgment debtor, as the holder of the legal title at the time the judgment was rendered and at the time the execution was levied. When the judgment lien attached to this land, the judgment creditor acquired a vested lien, capable of enforcement, even though it

may be subject to being divested if it can be shown that the complainant in the court below is entitled to have the deed to Mary O. Beeman, which was made and recorded seventeen days before the judgment, so reformed as to include within that deed the land in question.

*Id.* at 574. The Court left determination of plaintiff's right to reformation to the lower court on remand. Thus, the Court recognizes that the bank's vested interest is subject to divestment.

The appellant is of the view that the facts in this case fall squarely within the *Savarese* rule. However, under § 70(c) of the Bankruptcy Act the trustee takes the status of a hypothetical creditor—a judicial lien creditor "whether or not such a creditor exists." Courts will not look to the status of the individual creditors the trustee represents in order to define his status. *See Lewis v. Manufacturers National Bank*, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961); *Ford Motor Credit Company v. Wilson*, 385 F.2d 128 (5th Cir. 1967); *McKay v. Trusco Finance Co. of Montgomery, Alabama*, 198 F.2d 431 (5th Cir. 1952).

It is undisputed by the parties that under Florida law the trustee is deemed to be a judicial lien creditor without notice, regardless of whether one or all of the creditors in bankruptcy had actual or constructive notice. At 4B, *Collier on Bankruptcy*, ¶ 70.53, 634 (14th ed. 1978) the authors note that "the general principle in bankruptcy that the trustee represents the creditors of the estate has tended to make some courts forget the hypothetical or artificial status accorded the trustee under the strong-arm clause ..." Some courts have held that before a trustee can prevail under § 70(c) he must represent at least one creditor who did not have actual notice of the transfer sought to be avoided. See *In re Bazemore*, 189 F. 236 (N.D.Ala.1911); 4B, *Collier on Bankruptcy*, ¶ 70.53, 735 n.5 (14th ed. 1978). "[T]he better reasoned cases have upheld that the trustee under § 70(c) has the status of a creditor *without notice*, and thus there is no necessity for demon-

strating that he does or does not represent at least one actual creditor without notice." *Id.* at 636–637. There is "little room for doubt that the trustee is endowed by present § 70(c) with the lien of a levying creditor without notice. It is equally clear that a state statute could not deprive the trustee of his status as a lien creditor without notice, even though it may define conclusively the rights of such a creditor vis-a-vis transfers made by the debtor for security and other purposes." *Id.* at 640–641. *See Ford Motor Credit Company v. Wilson,* 385 F.2d 128 (5th Cir. 1967) (citing *McKay v. Trusco Finance Co. of Montgomery, Alabama,* 198 F.2d 431 (5th Cir. 1952). *See also Commercial Credit Company v. Davidson,* 112 F.2d 54 (5th Cir. 1940).

Appellant asserts that the trustee is not a judicial lien creditor who relied on the record because the federal statute does not give him that status. Judge Sauls holds that federal law does give the trustee that status. In his Opinion filed September 3, 1980 at 7, Judge Sauls states that under the Bankruptcy Act the trustee acquires "the rights and powers of the most ideal, perfect, or favored simple contract lien creditor who it is assumed or imagined could possibly exist under state law, whether or not such a creditor exists." *See In re Waynesboro Motor Company,* 60 F.2d 668 (S.D.Miss.1932). However, the Act does not specifically mandate that the trustee be accorded a most favored creditor status. Instead, the plain language of § 70(c) allows the trustee to choose between three very specific creditor categories for the purpose of challenging unrecorded third-party interests.

Cases have held that a "trustee is accorded an 'ideal' status . . . [in that] he is the 'perfect' creditor who has complied with all requirements necessary under the applicable law for a lien by legal or equitable process. He has such status irrespective of whether there are actually any such creditors in existence. He acquires his status from the Act, not from the creditors of the estate." 4B, *Collier on Bankruptcy,* ¶ 70.53, 636 (14th ed. 1978). *See Lewis v. Manufacturers National Bank,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961); *McKay v. Trusco Finance Co. of Montgomery, Alabama,* 198 F.2d 431 (5th Cir. 1952); *In re Waynesboro Motor Company, supra.* Courts have used the terms "ideal" and "perfect" to describe the hypothetical status of the trustee in bankruptcy. It has been perhaps an unfortunate choice of nomenclature. However, the intent throughout has been, I believe, to define the trustee as an ideal judicial creditor or one who has extended credit, recorded judgment and obtained a lien on the date of filing of debtor's petition in bankruptcy without actual knowledge of third party interests.

Since Florida law distinguishes between judicial lien creditors on the basis of whether or not they have relied on the record, the question remains into which category to place the trustee. The trustee is a hypothetical creditor as a matter of law. He, therefore, cannot be asked whether he had notice; he is assumed to have been without notice. Similarly, he cannot be asked whether he relied; the trustee should be deemed to have relied on the record.

The purpose of § 70(c) of the Bankruptcy Act is better served by strengthening the position of the trustee rather than subordinating him to unrecorded third party equitable interests. To assume that he did not rely would undo the effect of the strong-arm clause; the trustee would be unable to protect the interest of creditors who actually relied on record title.

Likewise, positing reliance better serves the purpose of the Florida recording statute, i.e., to promote the equitable policy that undisclosed and unknown secret interests, liens and equities are not to be favored in a complex, commercial world. *See Luria v. Bank of Coral Gables,* 106 Fla. 175, 142 So. 901, 908 (1931); *Rabinowitz v. Keefer,* 100 Fla. 1723, 132 So. 297, 300–301 (Fla. 1931); *Fong v. Batton,* 214 So.2d 649, 652 (Fla. 3d DCA 1968); *Buck v. McNab, Jr.,* 139 So.2d 734, 738–739 (Fla. 2d DCA 1962). In this case to presume that the trustee, in his capacity as a judicial lien creditor, relied on the record also serves the underlying purpose of the Florida recording statute by

placing the responsibility for an erroneous record squarely on those who committed the error.

The parties to this lease agreement are responsible for the fact that an inaccurate and misleading document remained of record. They had the ability to correct the record but failed to do so and should suffer the consequences of that failure, if anyone should.

Accordingly, it is ORDERED that the final order of the Bankruptcy Court granting summary judgment in favor of the defendant trustee is affirmed.