714 So.2d 542 (1998)
Thomas E. FRYER, Jr., Appellant,
v.
Dane MORGAN as Trustee of World Wide Air, Inc., Appellee.
No. 97-2575.
District Court of Appeal of Florida, Third District.
June 24, 1998.
Rehearing Denied July 29, 1998.
*543 Haber, Lewis & Pathman and Alex Kurkin and David B. Haber, Miami, for appellant.
Hustead & Magolnick and Robert M. Hustead, Homestead, for appellee.
Before NESBITT, GREEN and FLETCHER, JJ.
GREEN, Judge.
This appeal arises from a final summary judgment finding that appellee's deficiency judgment lien recorded against a third party properly attached to certain real property in which appellant claimed ownership and that appellee's judgment lien was superior. We reverse for the reasons stated.
Richard Kelly owned two apartment buildings located in Homestead, Florida at 1225 N.E. 1st Terrace ("1225 property") and 1127 N.E. 1st Avenue ("1127 property"). On or about January 28, 1992, Kelly sold the 1225 property to the 1225 Realty Corporation ("1225 Corp"), and the 1127 property to the 1127 Realty Corporation ("1127 Corp."). The 1225 and 1127 Realty Corporations were entities controlled by one Morris Liebman. Kelly's transfers of these properties were made by quit claim deeds. These deeds, however, were never recorded. As consideration for the purchase of these two properties, Liebman agreed to personally assume liability for all of the outstanding mortgages on these properties which totalled approximately $630,000. Liebman delivered a written guaranty evidencing the same to Kelly at the closing. At the time of this closing, appellee Dane Morgan, as trustee of Worldwide Air, Inc. ("Morgan"), held a mortgage from Kelly on the 1127 property. For that reason, a copy of Liebman's personal guaranty, which evidenced Kelly's sale of both of these properties, was also sent to Morgan.
When Liebman thereafter failed to pay the outstanding indebtedness on these properties as agreed, Kelly filed suit ("Kelly Action") against Liebman and his two entities for breach of contract, fraud, rescission and the appointment of a receiver. Kelly also simultaneously filed a lis pendens on both the 1127 and 1225 properties. A receiver was appointed in the Kelly Action on April 3, 1992, for the purpose of maintaining both apartment buildings and collecting rents for both properties. The record reveals that Morgan was fully aware of the Kelly Action and of the fact that both properties were in receivership.[1]
*544 While the Kelly Action was still pending in another division, Morgan filed this separate foreclosure action to foreclose on its mortgage held on the 1127 property. Morgan named Liebman, 1127 Corp. and the receiver in the Kelly Action as defendants. Morgan moved for final summary judgment of foreclosure in this action and attached Liebman's guaranty given to Kelly to the motion. A final summary judgment of foreclosure was entered in Morgan's favor on January 11, 1993. Pursuant to this judgment, a foreclosure sale of the 1127 property was held on February 16, 1993. When the proceeds of this sale did not completely satisfy Kelly's indebtedness to Morgan, Morgan was ultimately granted a deficiency judgment against Kelly. A certified copy of Morgan's deficiency judgment was recorded on February 9, 1995, and thus operated as a judgment lien on all property owned by Kelly as of that date.
While Morgan's foreclosure action was proceeding to judgment, the Kelly Action was likewise proceeding on its course. On August 24, 1992, Hurricane Andrew severely damaged the 1225 property. The receiver collected insurance proceeds in the sum of $168,975.36 under a policy taken out by Liebman on the property. Thereafter, on September 30, 1993, the receiver moved the court to approve the sale of the 1225 property to appellant, Thomas E. Fryer, Jr., a non-party, for $200,000 based upon a purchase contract. The court approved the sale of the 1225 property to Fryer on November 9, 1993. Prior to the closing on the sale, however, Liebman died.
In light of Liebman's death, the receiver sought guidance from the court in the Kelly Action as to the appropriate method of conveying title to the 1225 property to Fryer. The court entered an order authorizing the receiver to execute the deed to Fryer. Rather than proceeding in this fashion, however, all parties to the Kelly Action and all mortgagees and lienors on the 1225 property, entered into an agreement for Kelly to convey title to Fryer through the execution of a quit claim deed. Kelly executed the quit claim deed on February 21, 1995, and the deed was recorded on March 3, 1995, after Morgan's deficiency judgment lien against Kelly was recorded. It was further agreed by all of the parties to the Kelly Action that the sale proceeds from Fryer and the insurance proceeds would be used, to the extent possible, to satisfy the existing mortgages and liens on the 1225 property. The Kelly Action was thereafter dismissed without any judicial determination as to the rescission of Kelly's sale of the 1127 and 1225 properties to Liebman's entities.
On March 6, 1997, Morgan sought to execute its deficiency judgment entered in this foreclosure action against the 1225 property through a notice of a sale of the property. Fryer then intervened in this action and asserted his fee simple ownership of the 1225 property. Morgan filed a motion for summary final judgment asserting that its judgment lien against Kelly recorded on February 9, 1995, was a superior lien interest to Fryer's ownership interest in the 1225 property where Fryer's deed was recorded on March 3, 1995. The lower court entered final summary judgment declaring Morgan's prior recorded judgment lien to be superior to Fryer's later recorded quit claim deed for this property pursuant to Florida's recording statute. This appeal followed.
Although Fryer raises numerous reasons why summary judgment in Morgan's favor was error, we believe that the dispositive issue on this appeal is whether Kelly had any ownership interest in the 1225 property on February 9, 1995, to which Morgan's recorded judgment lien could properly attach. It is axiomatic, of course, that a creditor's judgment lien attaches only to property owned by the judgment debtor. See Accent Realty of Jacksonville, Inc. v. Crudele, 496 So.2d 158, 161 (Fla. 3d DCA 1986)(recording of creditor's judgment against debtor did not create judgment lien on property to which judgment debtor did not hold legal title); see also Bowers v. Mozingo, 399 So.2d 492, 494 (Fla. 3d DCA 1981)(judgment lien cannot attach to property until it is owned by judgment debtor); County of Pinellas v. Clearwater Fed. Sav. & Loan Ass'n, 214 So.2d 525, 527 (Fla. 2d DCA 1968)(judgment lien is a general lien which attaches to any property currently owned or subsequently acquired by *545 judgment debtor). To answer this question however, we must determine whether Kelly's sale of his ownership interest in this property to Leibman's 1225 Corp. on January 28, 1992, via an unrecorded quit claim deed was valid as to his creditor Morgan under Florida's recording statute. We conclude that it was, based upon Morgan's undisputed actual knowledge of this sale. Section 695.01(1), of Florida's recording statute provides in relevant part that:
(1) No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according law[.]
§ 695.01(1), Fla. Stat. (1995). The law in Florida has always been that an unrecorded deed does not affect its validity as between the parties and their privies. See Rabinowitz v. Keefer, 100 Fla. 1723, 1729, 132 So. 297, 299 (1931); Black v. Skinner Mfg. Co., 53 Fla. 1088, 43 So. 922, 922-23 (1907); Sweat v. Yates, 463 So.2d 306, 307 (Fla. 1st DCA 1984); Hensel v. Aurilio, 417 So.2d 1035, 1037 (Fla. 4th DCA 1982). However, under the plain language of section 695.01(1), an unrecorded deed is not good or effectual in law or equity against creditors or subsequent purchasers for valuable consideration who are without notice of the transaction. Under the recording statute, Kelly's sale of the 1225 property on January 28, 1992, through an unrecorded quit claim deed would nevertheless be effectual against his judgment creditor, Morgan, where Morgan had actual knowledge of the same. The undisputed record evidence before us reflects that Morgan was given a copy of Liebman's personal guaranty which clearly provided Morgan with actual notice of Kelly's divestment of his ownership interest in the 1225 property in January 1992. Indeed, Morgan utilized this guarantee in support of its motion for final summary judgment of foreclosure on the 1127 property. Under the recording statute then, Kelly's sale of this property to Liebman's entity was effective and complete even as to Morgan in January 1992. Morgan's subsequently recorded deficiency judgment lien against Kelly could not, therefore, attach to property no longer owned by Kelly. The granting of the summary judgment in Morgan's favor on this issue was therefore error as a matter of law. We recognize that our holding may now also call into question Fryer's ownership interest in the 1225 property since he purportedly acquired his ownership interest from Kelly. Since Fryer has filed no pleadings in this cause seeking a claim to quiet title on the 1225 property or for declaratory relief, we express no opinion at this time as to his interest in this property.
Reversed.
NOTES
[1] Indeed, Morgan's legal counsel in this action simultaneously defended Liebman, 1225 Corp. and 1127 Corp., in the Kelly Action.