HENDRY, Judge.
In November, of 1958, appellees, as plaintiffs below, instituted suit in the Circuit Court of Monroe County seeking to quiet title to certain real property on the island of Plantation Key. After some preliminary proceedings, appellees filed a motion to amend the complaint and to join additional parties defendant. The motion was granted, and an amended complaint was filed in November of 1965. Each of the newly joined “third party defendants”, who are appellants herein, received personal service of process.
In the amended complaint, appellees described the property specifically and de-raigned their title thereto, as they were required to do under § 66.20, Fla.Stat., F.S.A. Appellants defended, claiming superior title in themselves. Appellants’ claim of title was based primarily upon an “Order Designating Heirs at Law and Of Administration Unnecessary” rendered in probate proceedings of the Estate of Mary Louise Knowles, together with conveyances from certain of the named heirs to the appellants. The probate order, entered in 1963, was based, in turn, upon an instrument of conveyance from Henry Russell to Alexander A. Knowles and Mary Louise Knowles, his wife, which instrument was executed on April 8, 1915, and filed for record on March 28, 1961, in the Public Records of Monroe County, Florida.
The chancellor found as a matter of law that the property described by appellees in the amended complaint was located wholly within Government Lots 2 and 3, Section 8, Township 65 South, Range 38 East, on the island of Plantation Key. The deed from Russell, through which appellants claim title, describes only property in Government Lot 1, Section 8, of Plantation Key. The parcels of real estate claimed by each of the parties would, therefore, appear to be separate and distinct tracts of land. However, there exists some confusion as to the exact location of Government Lots 1, 2 and 3 because of errors in government surveys. The record on appeal indicates that section 8 has been resurveyed' and the boundary lines between the lots have been relocated. It is nevertheless, undisputed that the appellants are in actual possession of some portion of the property described in the amended complaint.
The chancellor awarded summary judgment in favor of the appellees, quieting *231 title in them. The order granting the summary judgment enjoins the appellants from placing of record any' instruments which would further cloud appellees’ title in the future, and also enjoins appellants from erecting or maintaining any fences, walls or obstructions upon the property until such time as the question of the location of the boundaries can be settled by a court of competent jurisdiction. The instruments through which appellants claimed title were decreed to be null and void, and of no further effect as to lands located in Government Lots 2 and 3. The court below specifically disclaimed jurisdiction to entertain in equity any proceedings regarding relocation of the lot boundaries. Appellants by this appeal seek to have reviewed the order granting summary judgment.
Of the numerous points on appeal raised by appellants, the first to be discussed is the contention that the chancellor erred in permitting the appellees to maintain their action by a suit to quiet title in equity, rather than by a suit in ejectment at law. In this contention, appellants rely upon § 66.16, Fla.Stat., F.S.A. and upon the case of Cox v. Lippard, Fla.1949, 40 So.2d 219. Section 66.16 Fla.Stat., supra, provides:
“66.16 Quieting title; additional remedy, jurisdiction.
“Courts of chancery in this state shall entertain suits by any person or corporation claiming title to any tract or parcel of land, or portion thereof, or where any two or more are claiming to own the same land or any portion thereof, under a common title, against all persons or corporations claiming title to said land adversely to complainant whether defendants claim or hold under a common title or not; and in said suits shall determine the title of the complainant and may make decrees quieting and confirming the title, and awarding possession to party or parties entitled thereto; provided, however, that if the defendant or any of them in such case is in the actual possession of any part of the land involved in such suit, a trial by jury may be demanded by either party, whereupon the court shall order said cause to be docketed on the law side of said court, and at the next regular term thereof shall cause an issue in ejectment to be made up and tried by a jury as to any lands claimed to be in the actual possession of the defendant, or either of them. But this provision for a trial by a jury shall not effect the proceedings as to any lands involved in such suit as are not claimed to be in the actual possession of the defendant. The court in equity may proceed to a final decree without awaiting the determination of the issue in ejectment herein above mentioned.”
Appellants additionally contend that the basis of the dispute between the parties is the location of the boundary lines of Government Lots 1, 2 and 3, and that, generally, boundary line disputes should not be settled by equitable proceedings to quiet title. See Stark v. Frayer, Fla.1953, 67 So.2d 237. The record on appeal clearly indicates that appellants requested a jury trial. Further, the record demonstrates that the lands claimed by appellees were located wholly within Government Lots 2 and 3, whereas the instruments under which appellants claim title described only property situated in Government Lot 1, we conclude, then, that the chancellor’s ruling on the issue of title was correct. The question now arises whether the decree quieting title in the appellees went too far. Did the chancellor rule upon issues that could have been properly tried only at law? We hold that he did not.
It is patent that the issues of title and of boundary line location are separate and distinct. Under the facts as they exist here, a decision as to one can have no effect upon any decision as to the other. The chancellor recognized that the boundary line issue was to be “determined by a court of competent jurisdiction.” This *232 point is made clear by the terms of the decree, which recites:
“4. That the court is making no ruling in this case as to the location of the boundary line between Government Lot 1 and Government Lots 2 and 3.”
We are of the opinion that chancellor did not exceed his jurisdiction, as defined in § 66.16, Fla.Stat., F.S.A., supra, when he proceeded to render a final decree without awaiting determination of any issues at law. See Albury v. Drummond, 95 Fla. 265, 116 So. 236 (1928).
Secondly, appellants contend that appel-lees are guilty of laches, hence, not entitled to a decree quieting title in their favor. Appellees rely upon the case of Van Meter v. Kelsey, Fla.1956, 91 So.2d 327, which we find to be applicable. The Van Meter case was a quiet title action arising out of Government resurvey and relocation of boundaries. Kelsey’s predecessors in title had constructed a fence according to the section line as laid out on the government survey of 1870. Subsequently, the United States made another survey in 1917, which survey when approved had the effect of moving the boundary east and south. Kelsey’s neighbor to the north then claimed all of the land between the fence, which had been maintained by Kelsey, and the new boundary some four hundred feet to the south. Kelsey defended by claiming adverse possession and laches. The opinion recites, beginning at page 330.
“Next we consider laches as a bar to the relief claimed by plaintiff. The elements of laches as stated in 19 Am.Jur., Equity, Sec. 498 were cited by the chancellor. We agree that these elements are necessary to establish laches as a bar to relief.
“The first of these elements is that there must be conduct on the part of the defendant, or on the part of one under whom he claims, giving rise to the situation of which complaint is made. In this case such conduct must be either the acts of adverse possession claimed to have been made by defendants’ predecessor and father or the filing of the deed from the other Kelsey heirs to defendants. Since this suit was instituted by the plaintiff in July 1954, some three and one half months after the deed to defendants was recorded, it is obvious that there could be no laches in bringing this suit as to that act. Therefore the acts or conduct to which the laches of plaintiff must relate are those of adverse possession on the part of the defendants’ predecessor and father.
“While the failure of the defendants to prove adverse possession is not conclusive on the point, it is indicative of the fact that there were either insufficient acts or conduct to put the plaintiff on notice that his rights were being invaded or that there was insufficient proof of such conduct.
“Under the facts of this case it does not appear to us that the conduct of the defendants’ predecessor was sufficient to require the plaintiff to act or be barred by laches.
“The second element of laches is that the plaintiff having had knowledge or notice of defendants’ conduct and having afforded the opportunity to institute suit, is guilty of not asserting his rights by suit.
* * * * * *
“The last element of laches is that of injury or prejudice to the defendant in event relief is accorded to the plaintiff, or in the event the suit is held not to be barred.”
In applying the first element of laches to the facts of the case here before us, we find that the conduct complained of must have been the recording of the order of the probate court rendered in the Knowles estate. Appellants have not proven adverse possession, indicating as in the Van Meter case that this conduct was insufficient to *233 require appellees to act. The recording of the deed from Russell to Knowles could not have constituted such conduct since that instrument described only property in Government Lot 1.
For the purposes of argument, we shall assume that the requisites of the second element have been met. This assumption encompasses two propositions: that appel-lees were on notice of the adverse claim of appellants as of the time the probate order was filed for record on January 28, 1963; and, that appellees were afforded an opportunity to assert their rights, but neglected to do so for some twenty months.
We find, however, that appellants’ contention breaks down upon reaching the last element. The rule in Florida is well settled that passage of time alone is insufficient to constitute laches. There must be some injury or prejudice to the defendant as well. In addition to Van Meter v. Kelsey, supra, see: Peacock v. Firman, Fla.App. 1965, 177 So.2d 560; Buck v. McNab, Fla.App.1962, 139 So.2d 739. The record on appeal is devoid of any showing of injury or prejudice to appellants by reason of the passage of those twenty months.
Finally, we reach the contention on the part of the appellants that appellees have failed to file a notice of lis pendens. Appellants cite § 66.36, Fla.Stat., F.S.A., asserting that the statute must be strictly construed so as to make the filing of lis pendens an absolute requisite to the maintenance of an action. We are of the opinion, however, that the failure to file a lis pendens is not fatal to the appellees’ cause. The purpose of the notice of lis pendens is to provide record notice that certain property is the subject of litigation. This has the effect of preserving the jurisdiction of the court and assuring an end to the litigation. The purpose of the pending suit may not be defeated by successive alienations of the subject property. This leads us to conclude, in conformity with the better reasoned cases, that a notice of lis pendens is of no effect between the parties to the action, and that failure to file is no defense. See 54 C.J.S. Lis Pendens § 22.
We have reviewed appellants’ remaining contentions and find them to be without merit. Therefore, for the reasons set forth above, we affirm.
Affirmed.