843 So.2d 287 (2003)
CROWN GENERAL STORES, INC., Appellant,
v.
ULTRA MEAT MARKET, INC., Appellee.
No. 3D01-1450.
District Court of Appeal of Florida, Third District.
February 19, 2003.
Ricardo R. Corona, for appellant.
Paul Morris, Miami, Luciano Isla, Richard W. Gross, Hialeah, for appellee.
Before COPE, LEVY, and FLETCHER, JJ.
FLETCHER, Judge.
Crown General Stores, Inc. [Crown] appeals a final judgment entered in favor of Ultra Meat Market, Inc. [Ultra] in an action to recover damages for non-payment of a leasehold mortgage. For the reasons which follow, we reverse.
*288 This case involves the lease to a supermarket located at 12895 SW 8th Street, in Miami, Florida. After a series of transactions, Foodtech of Miami [Foodtech] was assigned the 50-year lease and a leasehold mortgage on the premises. On August 7, 1989, Foodtech entered into a contract to sell the business to Fernando Rodriguez[1] for a cash payment. The contract was amended on September 7, 1989,[2] raising the purchase price and adding the following provision:
"14. Each month during the remaining term of the Lease which is being assigned to Buyer, Buyer shall make monthly payments to Seller's designee Crown General Stores, Inc. in the amount of $2,039.33 due and payable on the first day of each consecutive month commencing with the payment due 1 month after the date of the closing ... through and including the payment due and payable on November 1, 2009. Commencing on December 1, 2009 and on the first day of each consecutive month thereafter through the remaining term of the Lease ..., Seller shall pay to Buyer or to Buyer's designee the sum of $4,078.66 per month. These sums shall be payable regardless of any adjustment or modification which may be made to the Lease if it is made without the written consent of the Seller. These payments represent additional consideration to be paid by Buyer for the purchase of the Lease and all rights to the supermarket premises which is the subject matter of the lease and these monthly payments are hereafter referred to as the "Additional Consideration" ....
Payment of the Additional Consideration shall be secured by a collateral assignment of the Lease in recordable form ... and the lien of said collateral assignment shall also be perfected by the filing of a UCC-1 financing statement which references to the leasehold interest."
(R. 12). Pursuant to the agreement, on November 27, 1989, Foodtech assigned the lease to Rodriguez/FRPM subject to the obligations set forth in the August 7 and September 7 contracts.[3] In a subsequent settlement of a suit between the parties, Rodriguez/FRPM again acknowledged its obligations as set forth in Paragraph 14 of the September 7, 1989 amended contract. Rodriguez/FRPM thereafter signed a Collateral Assignment of Lease giving to Crown, as additional security, an assignment of its rights under the lease so that, in the event of default, Crown would be able to take control of and operate the supermarket. A UCC-1 financing statement was also filed on October 26, 1992.
Approximately a year later, Rodriguez/FRPM entered into negotiations to sell the supermarket to appellee Ultra. Ultra claims that throughout the sales transaction it was unaware of and, thus, never assumed Rodriguez/FRPM's obligations to Crown. In support of its argument Ultra points to the fact that none of the documents executed in connection with the closing on the sale of the supermarket mention the obligation to Crown. (These documents include the closing statement, bill of sale, affidavit of creditors, and the fifth assignment of lease executed by the landlord.) Crown argues that Ultra was *289 on notice of its interest during the transaction based on two sources of evidence Mr. Rodriguez' testimony at trial that he informed Ultra representatives of the obligation, and an agreement for sale and purchase dated July 28, 1993 and signed by the president of Ultra, although never fully executed as it lacks the seller's signature. This document contains the following paragraph:
"21. Purchaser shall purchase the business and accept assignment of the Lease subject to that certain Amendment to Contract for Sale and Purchase, dated November 7th, 1989 (between Foodtech Tamiami, Inc., as Seller and Fernando Rodriguez for F.R.P.M., Inc., as Purchaser) (Amendment). Purchaser shall assume all of Seller's obligations under said Amendment and shall indemnify and hold harmless the Seller and Fernando Rodriguez from all claims arising out of any breach of the Amendment which occurs after the closing. This clause shall survive the closing and shall not merge into the closing instruments."
(R. 32). The document reflects that Paragraph 21 was crossed out and initialed by Ultra's president. Crown filed the instant action against Ultra as an assignee and successor in interest of FRPM claiming breach of the settlement agreement and breach of the collateral assignment of lease entered into by FRPM. The matter was tried by the court and resulted in the judgment appealed.
Ultra's main argument in support of the trial court's ruling is that it was a bona fide purchaser for value without notice, and as such, it is entitled to the protection of Florida Statute Section 695.01 which states:
"No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice...."
We reject this argument because, as expressly stated, the statute only applies where the subsequent purchaser is without notice. See Ruotal Corp., N.W., Inc. v. Ottati, 391 So.2d 308 (Fla. 4th DCA 1980). After reviewing the evidence in the record, we conclude that Ultra was not a bona fide purchaser without notice. The notice required by the statute may be constructive, actual or implied actual notice. Sapp v. Warner, 105 Fla. 245, 141 So. 124 (1932). Under the circumstances herein, we conclude that Ultra had implied actual notice of the pre-existing interest in the leasehold before it purchased the business.
Implied actual notice has been defined as "notice inferred from the fact that the person had means of knowledge, which it was his duty to use and which he did not use." Id. at 255, 141 So. 124. The principle behind this notice is "that a person has no right to shut his eyes or ears to avoid information, and then say that he has no notice; that it will not suffice the law to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand." Id. Even disregarding Mr. Rodriguez' testimony that he informed Ultra's representative of the obligation to Crown which Ultra claims was contradicted by Ultra's president, there is no circumnavigating the written agreement for sale and purchase. Although the agreement was never fully executed, Ultra does not deny that its president read the document, crossed out paragraph 21, and signed it. The information contained in paragraph 21 is sufficient to put a reasonable purchaser on notice that the seller had a pre-existing obligation connected to the business and/or lease being sold. Ultra, therefore, had a duty to inquire further into the matter. *290 As mentioned above, it could not simply shut its eyes or ears in order to avoid reception of the information.
Furthermore, the information giving rise to inquiry notice does not have to be as precise as appellee would have this court hold. The fact of the existence of a debt connected with the business which FRMP and Rodriguez wanted assumed was sufficient to raise a question as to the state of FRMP's interest in the property. Contrary to Ultra's contentions, the document did not have to specifically mention that the debt was owed to Crown nor lead the purchaser to a recorded document evidencing the debt. The circumstances may reasonably suggest the necessity of inquiry. Rafkind v. Beer, 426 So.2d 1097 (Fla. 3d DCA 1983). Like the Rafkind court, we find that "[w]ith the information [Ultra] possessed ..., it was incumbent upon [Ultra] to at least attempt to ascertain" the pertinent facts concerning the pre-existing obligation mentioned in the sales agreement. Id. at 1099. And, just as in Rafkind, because the property interest involved was unrecorded, the prospective purchaser "had to perform their duty of inquiry outside the record as well." Id. at 1099.
After careful consideration, we find no merit in Ultra's other arguments. We, therefore, reverse and remand this case for further proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] Mr. Rodriguez subsequently assigned the contract to his corporation, FRPM.
[2] Although dated September 7, 1989, the amendment was not executed until November 7, 1989.
[3] Foodtech subsequently assigned its rights under the contracts to Appellant Crown.