955 So.2d 1189 (2007)
Florence DEMOSTHENES, Appellant,
v.
Chris GIRARD, an individual, Maria Vega, an individual, Ignacio Tamayo, an individual, Pedro M. Fernandez, an individual, Eduardo A. Exposito & Associates, PA., a Florida professional association, and Manuel M. Arversu, LLC., a Florida limited liability corporation, Appellees.
No. 3D06-2953.
District Court of Appeal of Florida, Third District.
May 2, 2007.
*1190 James Jean-Francois, for appellant.
Perez, Goran, Rodriguez and Javier J. Rodriguez and William G. Essig, Coral Gables, for appellees Pedro M. Fernandez and Ignacio Tamayo.
Before WELLS, and SUAREZ, JJ., and SCHWARTZ, Senior Judge.
WELLS, J.
Florence Demosthenes appeals from a final summary judgment in Chris Girard, Pedro M. Fernandez and Ignacio Tamayo's favor on three counts of her multiple count complaint seeking to secure an interest in a condominium unit located in Miami-Dade County, Florida. Because we find judgment was entered on an erroneous interpretation of the legal effect of a number of deeds, we reverse in part.
This action centers on ownership of one of two duplex units located at Southwest 110th Avenue and 7th Terrace in Miami, Florida. The complaint alleges that this unit, Unit A, was purchased from Better Homes Investments by Girard and Demosthenes in August 2002.[1] Title was taken in Girard's name alone, although Girard and Demosthenes equally shared in the acquisition cost of this unit, allegedly because Demosthenes had bad credit.
The warranty deed from Better Homes to Girard described the property, then believed by both Better Homes and Girard and Demosthenes to be a condominium unit, as:
Unit "A" of PRINCE CONDOMINIUM II, a Condominium, according to the Declaration of Condominium thereof, as recorded in Official Records Book 11306, at Page 171 of the Public Records of Miami-Dade County, Florida, together with all appurtenance thereto, and an undivided interest in the common elements of the said condominium.[2]
One month after Unit A was conveyed to Girard, he executed a quitclaim deed transferring ownership in Unit A from himself to himself and Demosthenes. The legal description in that deed was identical to that of the warranty deed from Better Homes to Girard.
Some time thereafter, Better Homes discovered that a termination of condominium had been filed in 1996 making its 2002 conveyance of these units as condominiums to Girard and Vega ineffectual. To rectify this mistake, Better Homes executed a "Corrective Warranty Deed" conveying the entire property, Units A and B and the surrounding property (formerly the common elements), to Girard and Vega as tenants in common. The legal description on this deed was:
The South 76.94 Feet of the West 109.88 Feet of Block 11, Sweetwater Groves, according to the Plat thereof, as recorded in Plat Book 8, at Page 50, of the Public Records of Miami-Dade County, Florida A/K/A Units "A" and "B", of Prince Condominium II, a Condominium, according to the Declaration of Condominium thereof, as recorded in Official Records Book 11306, at Page 171, of the Public Records of Miami-Dade County, Florida.
*1191 (Emphasis added). Girard and Vega then filed a declaration of condominium and executed warranty deeds conveying Unit A, now denominated Unit 2, to Girard and Unit B, now denominated Unit 1, to Vega, thereby accomplishing the goal of the original transfers from Better Homes.
Girard did not, however, execute a new quitclaim deed evidencing Demosthenes' interest in his unit. Rather, he sold the unit to Fernandez and Tamayo and kept the proceeds for himself. When Demosthenes learned of the sale, she sued Girard, Vega, Fernandez and Tamayo among other things for declaratory relief, to quiet title to, and to impose a constructive trust on Unit 2. She also sued the attorneys involved in these transactions for negligence. Girard moved for summary judgment (in which Fernandez and Tamayo joined) on the declaratory judgment, quiet title and constructive trust counts, claiming that the various documents of record established as a matter of law that the original warranty deed to Girard conveyed nothing to him (since no condominium existed at the time of the initial conveyance), thereby making his quitclaim deed to Demosthenes a nullity providing her with no interest in the property. The trial court agreed and granted summary judgment expressly finding that "Demosthenes has no interest in the real property which is the subject of this action." Because we find that Demosthenes can establish a beneficial interest in the subject property, we reverse the summary judgment on her constructive trust claim.
This court has long recognized that a contract to sell real property establishes the vendee "as the beneficial owner of the property, with the vendor retaining only naked legal title in trust for the vendee." B.W.B. Corp. v. Muscare, 349 So.2d 183, 184 (Fla. 3d DCA 1977); see Hull v. Maryland Cas. Co., 79 So.2d 517, 518 (Fla.1954) (upon entry of an agreement to convey title to realty, the "vendee immediately becomes the beneficial owner, and the vendor retains only naked legal title as security for payment of the purchase price"); Estate of Sweet v. First Nat'l Bank of Clearwater, 254 So.2d 562, 563 (Fla. 2d DCA 1971) (stating that "when an owner makes a specifically enforceable contract to sell his real property, the vendee becomes the beneficial owner and the vendor retains only naked legal title in trust for the vendee as security for the vendee's performance"). Thus, when Better Homes contracted in 2002 to sell the unit at issue to Girard, and certainly when it accepted payment for that unit and issued the first, albeit defective, warranty deed to him, Girard became the beneficial or equitable owner of the unit. This is so even if legal title did not effectively pass to him by virtue of the first defective warranty deed. Consequently, when Girard, the beneficial owner of the unit, executed a quitclaim deed to himself and Demosthenes, he effectively conveyed a beneficial interest in the unit to Demosthenes. Although legal title may not have passed to Demosthenes at that time, her beneficial interest in this property was established by virtue of these deeds.
Girard's failure, after receiving the corrected deed, to either execute a new deed conveying Demosthenes' previously acknowledged interest in the unit to her or to share the proceeds from the sale of the unit with her, entitles Demosthenes to imposition of a constructive trust against the sales proceeds. See John G. Grimsley, Florida Law of Trusts § 14-1 (4th ed.2006) (stating that a constructive trust is an equitable creation, implied from circumstances, to avoid a result that "allows a party to be unjustly enriched through abuse of confidence, duress, or fraud, whether the fraud is actual or constructive"); *1192 see also Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 421, 422 (1927) (confirming that a "moral, social, domestic, or personal" relationship may support imposition of a constructive trust where "through actual fraud, abuse of confidence reposed and accepted, or through other questionable means [one] gains something for himself which in equity and good conscience he should not be permitted to hold"); Provence v. Palm Beach Taverns, Inc., 676 So.2d 1022, 1025 (Fla. 4th DCA 1996) (holding that "a constructive trust is a remedial device with dual objectives: to restore property to the rightful owner and to prevent unjust enrichment"); Abreu v. Amaro, 534 So.2d 771, 772 (Fla. 3d DCA 1988) (accord); George Gleason Bogert et al., The Law of Trusts and Trustees § 471 (rev.2d ed.2006) ("If the property has been sold the trust attaches to its proceeds in the hands of the defendant or to other property purchased by defendant into which the original property or its proceeds can be traced.") (footnote omitted).
It also entitles her to pursue an equitable lien against the property itself, because the defective warranty deed from Better Homes to Girard and the quitclaim deed from Girard to himself and Demosthenes appear to be in the chain of title of this property, and because the attorney who prepared these deeds is the same attorney who prepared the warranty deed from Girard to Fernandez and Tamayo. See Restatement (First) of Restitution § 168 (1937) ("Where a person holding property in which another has a beneficial interest transfers title to the property in violation of his duty to the other, the transferee holds the property subject to the interest of the other, unless he is a bona fide purchaser."); George Gleason Bogert et al., The Law of Trusts and Trustees § 471 (rev.2d ed.2006) ("[I]f the trust property or its product can be traced into the hands of a third party, a constructive trust may be imposed upon the property in the hands of the third party unless he is a bona fide purchaser for value and without notice."); Id. § 881 (stating that to be a bona fide purchaser three conditions must be satisfied: the purchaser must have "(1) acquired the legal title to the property in question; (2) he must have paid value therefor; and (3) he must have been innocent of knowledge of the equity against the property at the time when he paid his value and acquired his title") (footnotes omitted); Id. § 894 ("If the prospective purchaser of the trust property, or of other property subject to an equity, learns of facts personally or through an agent which, while not conclusively showing the existence of a trust or other equity, would lead an ordinarily prudent man to a belief that there was a possibility that an equity existed, the purchaser has a duty to make a reasonable inquiry concerning the existence and nature of the possible equity, and he will be charged with knowledge of the facts concerning the equity which a reasonable investigation would have brought to light."); Crown Gen. Stores, Inc. v. Ultra Meat Market, Inc., 843 So.2d 287, 289 (Fla. 3d DCA 2003) (stating that the principle behind implied actual notice is "that a person has no right to shut his eyes or ears to avoid information, and then say that he has no notice; that it will not suffice the law to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand." (quoting Sapp v. Warner, 105 Fla. 245, 141 So. 124, 127 (1932))); Gordon v. Aqua-Solar Assoc., 722 So.2d 910, 912 (Fla. 1st DCA 1999) ("Where there is direct information of a prior right or facts from which actual knowledge can be inferred, there is notice of an earlier interest in property which will be sufficient to charge a subsequent purchaser with *1193 knowledge of a prior claim. . . . Implied actual notice can arise not only when a party actually has information which describes the interest of a third party, but also when a party has the means to obtain knowledge under circumstances reasonably suggesting the need for an inquiry, but does not use that knowledge and means to obtain the information."); Hardaway Timber Co. v. Hansford, 245 So.2d 911, 913 (Fla. 1st DCA 1971) ("Notice, sufficient to eliminate the transferee as a bona fide purchaser for value without notice can be either `actual' or `constructive.'"). See also George Gleason Bogert et al., The Law of Trusts and Trustees § 912 (Rev.2d ed.2006) (explaining that the "notice of a trust or other equity or of a breach of trust may come to a principal through an agent," and that "[i]f the agent receives notice of an equity while he is acting for his principal, usually this notice affects the principal and prevents him from being a bona fide purchaser"); Griffith v. Investment Co., 92 Fla. 781, 110 So. 271, 271 (1926) ("It is a well-settled principal of law that an attorney acting within the scope of his authority represents his client and his acts of omission as well as commission are to be regarded as the acts of the person he represents, and therefore his neglect is equivalent to the neglect of the client himself."); Small v. Colonial Inv. Co., 92 Fla. 503, 109 So. 433, 434 (1926) (same); Ruotal Corp., N.W., Inc. v. Ottati, 391 So.2d 308, 309 (Fla. 4th DCA 1980) (citing the general proposition that "knowledge of the agent constitutes knowledge of the principal as long as the agent received such knowledge while acting within the scope of his authority").
Accordingly, the summary judgment on Demosthenes' constructive trust claim is reversed and remanded for further proceedings consistent with this opinion. The summary judgment on the quiet title and declaratory judgment claims is affirmed.
NOTES
[1] The week before Unit A was conveyed to Girard, Better Homes conveyed Unit B, the other unit in the duplex, to Maria Vega, the individual who had occupied it for some time.
[2] The warranty deed to Vega conveyed: "Unit B, of PRINCE CONDOMINIUM II, a Condominium, according to the Declaration of Condominium thereof, as recorded in Official Records Book 11306, at Page 171, of the Public Records of MIAMI-DADE County, Florida."