954 So.2d 758 (2007)
FLANIGAN'S ENTERPRISES, INC., a Florida corporation, Appellant,
v.
SHOPPES AT 18TH & COMMERCIAL, INC., a Florida corporation, SKHHP Broward Building Partnership, a Florida general partnership, Leonard Hayet, Edward Glickman, as Personal Representative of the Estate of Franklin Z. Glickman, and David Bowman, Esquire, an individual, Appellees.
No. 4D06-1276.
District Court of Appeal of Florida, Fourth District.
May 9, 2007.
*759 H. Clay Roberts of Roberts & Durkee, P.A., Coral Gables, for appellant.
Margaret Villella of Atkinson, Diner, Stone, Mankuta & Ploucha, P.A., Fort Lauderdale, for appellee Shoppes at 18th & Commercial, Inc., a Florida corporation.

ON MOTION FOR REHEARING
GROSS, J.
We grant appellant's motion for rehearing, withdraw our earlier opinion, and issue the following.
The issue in this case is whether the purchaser of a commercial building was on notice of an unrecorded termination by release of a parking easement so that the purchaser is precluded from relying on section 695.01, Florida Statutes (2001) to avoid the release. We hold that the undisputed record evidence was that the purchaser was on notice of the release within the meaning of the statute and affirm.
Appellant Flanigan's Enterprises, Inc. purchased a commercial building from SKHHP Broward Building in 1999. The building is next to a shopping center owned by appellee Shoppes at 18th & Commercial, Inc. in Fort Lauderdale. The dispute concerns a parking easement that, if valid, would give Flanigan's, as owner of the adjacent building, the right to park in a portion of the shopping center's parking lot.
On August 25, 1964, Flanigan's predecessor in interest, The Fourth Realmart Inc., entered into a mutual parking easement agreement with Shoppes's predecessor in interest, Baldwin Corporation. The easement, which was later recorded, granted both parties parking privileges on each other's property. A portion of the parking easement was released on October 21, 1966. The easement agreement was again modified in 1970. In 1987, South Florida Development Associates Limited Partnership, a predecessor in interest to Shoppes, became "desirous of terminating the Mutual Parking Easement." To accomplish this purpose, South Florida and SKHHP entered into an agreement on June 10, 1987. The contract stated: "South Florida and SKHHP are desirous of rescinding THE PARKING AGREEMENT provided that SKHHP[1] can purchase certain property from South Florida constituting a portion of THE SHOPPING CENTER." As part of the agreement, South Florida agreed to sell a portion of property adjacent to the building owned by SKHHP. According to the agreement, the property purchased from South Florida was to be used to construct sufficient parking for SKHHP's *760 building. South Florida held a mortgage on the property sold to SKHHP.
A July 24, 1992 agreement further described the rights of the South Florida/Shoppes and SKHHP upon completion of the parking lot intended for the use of SKHHP's building. Due to a scrivener's error in paragraph 6, the 1992 agreement stated:
5. Upon completion of the parking lot described above, SOUTH FLORIDA/SHOPPES will transfer any and all interest in said improvements to SKHHP free and clear of any claims or liens of whatsoever nature as a result of the construction by SOUTH FLORIDA/SHOPPES.
6. At the time of the transfer described in paragraph 5 above, any and all rights or benefits of SOUTH FLORIDA/SHOPPES in and to parking on the property owned by SOUTH FLORIDA/SHOPPES shall be immediately terminated.
There is no dispute that the scrivener's error occurred in paragraph six where the drafter mistakenly placed the party name "SOUTH FLORIDA/SHOPPES" instead of SKHHP as the party whose "rights or benefits . . . in and to parking owned by SOUTH FLORIDA/SHOPPES shall be immediately terminated." One purpose of the 1992 agreement was to terminate the mutual parking easement; the agreement provided for South Florida/Shoppes to construct a parking lot on the property SKHHP purchased from South Florida/Shoppes in consideration for SKHHP's release of any right of use in the South Florida/Shoppes parking lot. Subsequently, consistent with the agreement, South Florida/Shoppes constructed the parking lot and SKHHP discontinued any further use of South Florida/Shoppes parking area.
On January 23, 1993 Ronald Mastriana, attorney for South Florida/Shoppes, drafted the following letter and release:
Dear David [attorney for SKHHP],
In order to ensure a clean title for my clients with regard to the parking agreement, please have your client execute the enclosed Release which you may hold in trust until the completion of the parking lot. Please note, that the parking lot was finally approved by the City Commission on January 5, 1993.
The parking release was attached to the letter. On February 5, 1993 David Bowman, the SKHHP attorney, acknowledged that he held in escrow the original parking release executed by SKHHP. Bowman's letter read:
Dear Ron:
Please be advised that my client has executed the Parking Release recently sent to me by you (a copy of the execution page only enclosed for your reference) and, further, that I will be holding the original Parking Release in escrow.[2]
The mutual parking easement and related agreements were the subject of a circuit court action. The action concerned, inter alia, SKHHP's default under the mortgage and note held by South/Shoppes for the purchase of the land upon which the new parking lot was constructed. In the litigation, SKHHP took the position that it was not required to pay on the note because the parking lot Shoppes agreed to build for SKHHP on the mortgaged property was not built by the stated deadline. The circuit court entered a final judgment in favor of South/Shoppes, holding that *761 SKHHP had accepted the benefit of the parking lot improvements made by Shoppes on SKHHP's property and that the note was to be paid.
In 1999, Flanigan's entered into a contract to purchase the building owned by SKHHP. The area immediately in front of this building was Shoppes' parking lot. Because Flanigan's anticipated opening a liquor store on the first floor of the building and utilizing the rest of the structure for corporate offices, part of the building's appeal was the recorded 1964 parking easement, which allowed the owner of the building to utilize Shoppes' parking lot.
To ascertain whether the parking easement would continue after the sale of the property, Flanigan's and SKHHP executed an Addendum to the contract for sale and purchase that provided that, "[w]ithin ten days of the Effective Date, the Seller shall provide the Buyer with copies of any and all agreements with the owner of the adjoining shopping center, along with copies of all orders and judgments entered in any litigation with the same." The Addendum further provided that if Flanigan's discovered anything in the documents so provided that was unacceptable to it, then Flanigan's could cancel the contract.
On September 24, 1999, pursuant to the addendum, SKHHP's attorney Bowman provided the following documents to Flanigan's attorney:
1. Mutual Parking Easement dated August 25, 1964 recorded July 21, 1966 in OR 3157/320;
2. Agreement dated October 21, 1966 recorded in OR 3322/844;
3. Agreement dated September 21, 1970;
4. Settlement Agreement dated __, 1987,
5. Addendum To Settlement Agreement dated August 17, 1987;
6. Parking Agreement Termination and Non-Exclusive Parking Easement dated May 3, 1988; (no apartment buildings were ever constructed).
7. Amended Settlement Agreement dated July 24, 1992;
8. Addendum To Amended Settlement Agreement dated May __, 1993;
9. Judgment For Plaintiffs entered January, 1998;
10. Final Judgment for Plaintiffs dated March 27, 1998 (incorporates January, 1998 Judgment), The foregoing Final Judgment is in the process of being satisfied and the Lis Pendens released;
11. F. Ronald Mastriana letter dated March 10, 1994.
The March 10, 1994 letter provided to Flanigan's attorney read in pertinent part:
Enclosed please find a release of a mutual parking easement which was recorded on title in 1964. . . . Although we feel that the purposes of the mutual parking agreement are now frustrated by the current development of the property, the easement creates a cloud on the title of both the SKHHP property and the property owned by Shoppes at 18th & Commercial.
I would appreciate if you would review the release. . . . hav[e] your client execute the release and call me upon its execution . . .
On October 11 and October 19, 1999, Flanigan's attorney wrote to Shoppes's attorney, Ronald Mastriana, concerning the mutual parking easement. In response, on November 1, 1999, Shoppes's attorney replied that "[t]he mutual parking easement no longer exists."
Flanigan's attorney responded by letter dated November 8, 1999, stating as follows:

*762 To date, I have seen no document which released or terminated the Mutual Parking Easement, yet in your letter of November 1, 1999 you indicated that the Mutual Parking Easement no longer exists. Furthermore, when Ken Kurtz spoke with your client directly, he was advised that the rights under the Mutual Parking Easement had been resolved in the recently concluded litigation with SKHHP Broward Builders Partnership, yet I have had an opportunity to read the Final Judgments from the litigation and there is no mention of the Mutual Parking Easement, not the rights granted thereunder. Needless to say, this entire matter is very confusing.
In an effort to resolve the question over rights under the Mutual Parking Easement, dated August 25, 1964, a meeting may be beneficial. Flanigan's is committed to proceed with the above referenced transaction and anticipates being neighbors with your client for quite some time. Obviously, litigation with your client is not the most beneficial way to begin a long term relationship.
There is no indication that the parties met personally to discuss the matter as Flanigan's attorney suggested.
However, on November 29, 1999, a Shoppes attorney, responded to Flanigan's attorney's November 8, 1999 letter:
Your letter of November 8 to Ron regarding the above was referred to my attention.
The Mutual Parking Easement to which you make reference no longer exists.
There was an instrument called the "Amended Settlement Agreement" dated 24 July, 1992 which said in essence that as and when a certain parking lot was built, title to the parking lot would be transferred to SKHHP and SKHHP would waive and relinquish any claims to parking on the property owned by South Florida/Shoppes.
The enclosed Final Judgment clearly indicates that the parking lot was accepted by the SKHHP defendants.
By virtue of the Amended Settlement Agreement and the Final Judgment read together it is incontrovertible that the Mutual Parking Easement has been extinguished
Trust that is responsive to your question.
On December 15, 1999, another Shoppes attorney wrote to Flanigan's attorney and emphasized that the mutual parking agreement had been terminated:
Mike gave me a copy of your December 1, 1999 letter. Both you and your client should not rely upon a mutual parking agreement that was terminated between the parties.
Why do you think the lots were sold to SKHHP for parking and why do you think S. Florida paid the cost of improving those lots for parking? Certainly not because the individuals like each and desired to give each other a gift.
I clearly told Joe not to rely upon the parking agreement. I suggested that he get together with Harry and discuss his plans.
Please be on notice that unless S. Florida grants access to their parking, there is no right to use their parking. The City of Fort Lauderdale has been informed of this fact. There is no code required for parking at S. Florida for the SKHHP building on uses. Please notify Joe of this fact. I am certain he does not want a lawsuit.
In spite of the above correspondence, Flanigan's decided to proceed with the purchase of the property. The closing occurred on December 15, 1999. At the closing Flanigan's counsel specifically inquired *763 of a SKHHP general partner, and his attorney David Bowman (the author of the February 5, 1993 letter quoted above), as to whether any document had been executed that affected the validity of the parking easement. The general partner and Bowman assured Flanigan's representative that nothing had been executed that affected the validity of the parking easement. Bowman later admitted that he failed to disclose the existence of the document releasing the parking easement because he "had forgotten it existed."
After closing on the property, Flanigan's brought a declaratory judgment action against Shoppes seeking to establish that the parking easement remained valid. Shoppes counterclaimed for reformation to correct a scrivener's error in paragraph 6 of the 1992 amended settlement agreement, quoted above. In a third party action, Shoppes brought SKHHP and attorney Bowman into the lawsuit. Bowman later filed a counterclaim for interpleader concerning the parking release in his possession.
On summary judgment, the trial court granted Shoppes's request for reformation. The court reformed paragraph six of the 1992 amended settlement agreement to read as follows:
At the time of the transfer described in paragraph 5 above, any and all rights or benefits of SKHHP in and to parking on the property owned by South Florida/Shoppes shall be immediately terminated.
The court also granted summary judgment in favor of Shoppes on the declaratory action.
The release of the parking easement burrowed in attorney Bowman's files was never recorded. The failure to record the release does not affect its validity as between the parties. See Fryer v. Morgan, 714 So.2d 542, 545 (Fla. 3d DCA 1998). Flanigan's contends that the trial court erred in granting summary judgment because there was a disputed issue of fact as to whether it was on notice that the parking easement had been terminated. This argument turns on Flanigan's ability to rely on section 695.01, Florida Statutes (2001), which provides:
No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law. . . .
Under this statute, an unrecorded release of the parking easement is not effectual against Flanigan's, a subsequent purchaser of the SKHHP building, if Flanigan's bought "without notice" of the release.
The supreme court has written that actual notice under the statute is of two kinds:
(1) Express, which includes what might be called direct information; and (2) implied, which is said to include notice inferred from the fact that the person had means of knowledge, which it was his duty to use and which he did not use, or, as it is sometimes called, implied actual notice.
Sapp v. Warner, 105 Fla. 245, 141 So. 124, 127 (1932).[3] To constitute notice of an unrecorded property interest or its release, "the information must come from some one interested in the estate, or from some authoritative source;" "[v]ague reports *764 and rumors from strangers are not a sufficient foundation on which to charge a purchaser with notice." Hopkins v. O'Brien, 57 Fla. 444, 49 So. 936, 940 (1909). If believed by the finder of fact, oral testimony alone may support a finding of notice under section 695.01. See McDonald v. McGowan, 402 So.2d 1197, 1200 (Fla. 5th DCA 1981). If a person has information that would lead a reasonable man to make further inquiry for his own protection, but fails to further investigate and learn what the inquiry would reasonably have uncovered, the person "must suffer the consequence of his neglect." Chatlos v. McPherson, 95 So.2d 506, 509 (Fla.1957); Rafkind v. Beer, 426 So.2d 1097, 1099 (Fla. 3d DCA 1983) (quoting Sickler v. Melbourne State Bank, 118 Fla. 468, 159 So. 678, 679 (1935)), see also Citgo Petroleum Corp. v. Fla. E. Coast Ry. Co., 706 So.2d 383, 386 (Fla. 4th DCA 1998) (citing Chatlos). This aspect of implied actual notice is based upon the principle
that a person has no right to shut his eyes or ears to avoid information, and then say that he has no notice; that it will not suffice the law to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand.
Sapp, 141 So. at 127.
Here, the undisputed record evidence[4] was that Flanigan's had both actual and implied actual notice that the parking easement had been released prior to the closing. Shoppes emphatically told Flanigan's attorney about the release. Flanigan's was provided with documentation of the underlying agreement concerning the release which specified the consideration SKHHP was to receive. Flanigan's knew of the circuit court judgment that established that Shoppes had performed its obligations under the agreement and that SKHHP had accepted the benefits of the parking lot improvements. Through Mastriana's letter to Bowman in March 1994, Flanigan's knew that the release had been sent to Bowman for SKHHP's execution. In possession of this information and able to cancel the contract if the parking easement situation was not "acceptable" to it, Flanigan's nonetheless went forward with the purchase with its "eyes and ears" shut to the necessary inferences from the facts. Flanigan's claims that it relied on attorney Bowman's representation concerning the viability of the parking easement. However, as to Shoppes, a third party to the transaction between SKHHP and Flanigan's, and the owner of the property covered by the parking easement, that reliance is unavailing. Shoppes expressly told Flanigan's that the easement had been extinguished. Flanigan's had powerful evidence that the deal for the release had been consummated, and Flanigan's had no reasonable explanation as to why no release was executed.
*765 We therefore affirm the summary judgment in the declaratory judgment action. Because reformation is allowed against all persons, except bona fide purchasers for value and without notice, Fla. Masters Packing, Inc. v. Craig, 739 So.2d 1288 (Fla. 4th DCA 1999) (citing Holley v. May, 75 So.2d 696, 697 (Fla.1954)), we affirm the reformation of the 1992 amended settlement agreement.
WARNER and POLEN, JJ., concur.
NOTES
[1] SKHHP is a successor in interest to Barnaby's Inc. who was a successor in interest to The Fourth Realmart, Inc., the original party to the mutual parking easement. As stated above SKHHP is the predecessor in interest to Flanigan's, the appellant in this suit.
[2] Flanigan's did not learn of the existence of the January 23 and February 5, 1993 letters until after it closed on the property.
[3] Sapp v. Warner, 105 Fla. 245, 141 So. 124, 126 n. 1 (1932), construed section 5698, C.G.L., and section 3822, R.G.S., which, in pertinent part, are worded identically to section 695.01, Florida Statutes (2001).
[4] Whether the trial court correctly granted a motion for summary judgment is a question of law; therefore, this court reviews such a decision de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000). "To obtain a final summary judgment, the moving party must conclusively demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to a judgment as a matter of law." Maldonado v. Publix Supermarkets, 939 So.2d 290 (Fla. 4th DCA 2006) (citing Fla. R. Civ. P. 1.510(c); Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966)). The proof must be sufficient "to overcome all reasonable inferences which may be drawn in favor of the opposing party." Id.