NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

RANDALL GUNNING, individually,            )
CASTLE CONSULTING I LTD., INC., a         )
Florida corporation; and RIVER OF         )
LIFE INTERNATIONAL OUTREACH               )
CENTER, INC., a Florida corporation,      )
                                          )
            Appellants,                   )
                                          )
v.                                        )      Case No. 2D16-2214
                                          )
EQUESTLEADER.COM, INC., a                 )
Virginia corporation; and DONALD          )
PIERCE, individually and president of     )
Equestleader.Com, Inc.,                   )
                                          )
            Appellees.                    )
_____ )

Opinion filed October 13, 2017.

Appeal from the Circuit Court for
Pinellas County; Thomas H. Minkoff,
Judge.

Walter E. Smith of Meros, Smith,
Lazzara, Brennan, Brennan & Olney,
P.A., St. Petersburg, for Appellants.

Eric E. Ludin and Amy Ray of Tucker &
Ludin, P.A., St. Petersburg, for
Appellees.


NORTHCUTT, Judge

            Equestleader.com, Inc., recovered a judgment for civil trespass damages

against Randall Gunning, Castle Consulting I Ltd, Inc., and River of Life International Outreach Center, Inc. We reverse because, as a matter of law, none of the appellants committed a trespass.

This dispute arose from an unorthodox, June 2006 real estate transaction wherein Gunning purchased real property from Equestleader subject to existing mortgages. The property consisted of two contiguous lots that shared the same address in Pinellas Park. Situated on lot 3501 were a stable and a barn. On lot 3508 was a house. The parties' contract provided that Gunning would receive possession upon the execution of the contract and that Equestleader would "net no proceeds from the sale." The contract further stated: "Seller authorizes buyer to negotiate with Wachovia Bank regarding payoff or settlement of account and accepts title subject to mortgage."

The day after the execution of the sales contract, the parties entered into a separate agreement under which Equestleader and its president, Donald Pierce, would furnish consulting services in exchange for $250,000 and a yacht owned by Gunning. The consulting agreement incorporated by reference the contract for sale of the Pinellas Park property and also provided that if Gunning successfully negotiated with Wachovia Bank to reduce the mortgage to less than the amount owed at time of closing on the contract for sale, Gunning would remit to Equestleader and Pierce half the resulting savings.

On September 1, 2006, Pierce executed a warranty deed conveying the property to Gunning. However, he signed the deed in his individual capacity instead of as president of Equestleader, the property owner. Four years later, on August 31, 2010,

Gunning's attorney contacted Pierce's attorney in regard to the error in the deed. Subsequently, Pierce refused to sign a corrected deed as president of Equestleader, complaining that the mortgages on the property were not current. However, on August 2, 2010, a tax deed had been recorded showing that appellant Castle Consulting had purchased lot 3501 at a tax sale on July 28, 2010. Gunning testified at trial that he later purchased lot 3501 from Castle Consulting.

On December 2, 2011, Equestleader filed suit seeking to eject the occupants from the Pinellas Park property. Pierce later testified that he had personally gone onto the property and asked the occupants to leave. However, there was no testimony as to the date this occurred, other than that it was after the error in the warranty deed was discovered.

Meanwhile, Wachovia Bank, N.A., had obtained a summary final judgment foreclosing its mortgage on lot 3508 on June 10, 2010. On April 4, 2013, an amended final summary judgment of foreclosure was entered nunc pro tunc to that date—Gunning testified at trial that he had made no mortgage payments between late 2008 and 2010. D W Homes purchased the property at a foreclosure sale for $75,500, and the certificate of title was issued on December 3, 2013. The next day, D W Homes transferred lot 3508 to appellant River of Life by quitclaim deed. The trial testimony established that River of Life was a company controlled by Gunning. He testified that D W Homes had outbid him at the foreclosure sale and that he then had paid $85,000 for lot 3508.

Following the foreclosure sale, Equestleader dropped its ejectment action and filed a third amended complaint against Gunning, Castle Consulting, and River of

Life, claiming damages for civil trespass on both lots 3501 and 3508. The complaint alleged: "Throughout the time between September 1, 2006 and December 2013 or January 2014, the Defendants trespassed on the Plaintiff's property, occupying the property without lawful right or authority and without compensation to the Plaintiff."

After a nonjury trial, the trial court entered judgment for Equestleader. The court found that "[o]n October 31, 2010, the parties discovered the error with the Deed and the Plaintiff's consent to the Defendants' occupancy of the properties was revoked." The court ruled that the use and occupancy of the premises after consent to possession had been revoked was a trespass. It awarded damages against the three defendants based on the value of the property, measured by the price the defendants paid respectively to buy the one lot at the tax sale and to buy the other lot from the winning bidder in the foreclosure. This was error; the proper measure of damages for a trespass is the value of the loss of use and enjoyment of or the injury to the land trespassed upon. Daniel v. Morris, 181 So. 3d 1195, 1199 (Fla. 5th DCA 2015). However, we need not delve further into this issue or remand for a recalculation of damages because there was no trespass here to begin with.

Civil trespass to real property occurs when there is an injury to or use of the land of another by one having no right or authority. Winselman v. Reynolds, 690 So. 2d 1325, 1327 (Fla. 3d DCA 1997). To sue and recover for a trespass, the plaintiff must have been the owner or rightfully in possession of the land at the time of the trespass. Vincent v. Hines, 84 So. 614, 616 (Fla. 1920). Neither was the case here.

Gunning became the equitable owner of the property when he and Equestleader entered into the contract for purchase and sale of the property, and that

- 4 -

ownership continued notwithstanding the defective execution of the warranty deed. "[A] contract to sell real property establishes the vendee 'as the beneficial owner of the property, with the vendor retaining only naked legal title in trust for the vendee.' " Desmosthenes v. Girard, 955 So. 2d 1189, 1191 (Fla. 3d DCA 2007) (quoting B.W.B. Corp. v. Muscare, 349 So. 2d 183, 184 (Fla. 3d DCA 1977)). Further, as recited by the Desmosthenes court:

> Thus, when Better Homes contracted in 2002 to sell the unit at issue to Girard, and certainly when it accepted payment for that unit and issued the first, albeit defective, warranty deed to him, Girard became the beneficial or equitable owner of the unit. This is so even if legal title did not effectively pass to him by virtue of the first defective warranty deed.

Id.

Indeed, Equestleader acknowledged and the trial court found that Gunning was authorized to occupy the property as its equitable owner at least until Equestleader "revoked" permission for Gunning to do so. But even if Equestleader rightfully could have unilaterally and extra-judicially revoked the fully executed purchase and sale transaction, this did not take place until sometime after August 31, 2010, when Equestleader's attorney was made aware of the defect in the original deed.

By that time, Equestleader had no interest, legal or equitable, in lot 3501; that property had been conveyed by tax deed to Castle Consulting. See Sullivan v. Woodward, 582 So. 2d 31, 33 (Fla. 1st DCA 1991). Thereafter, Castle Consulting had the right to occupy lot 3501 and Equestleader had no right to claim a trespass as to it. Thus, Castle Consulting's sale of the lot to Gunning was free of any claim by Equestleader.

- 5 -

As for lot 3508, it is doubtful that Equestleader even could have asserted an equity of redemption following the June 2010 foreclosure judgment in favor of Wachovia. Regardless, even assuming such an interest, it was of no greater gravity than Gunning's equitable interest in the property, and it could not have given Equestleader any greater right to occupy the property than Gunning's. And, of course, any such interest was extinguished when D W Home purchased the property at the foreclosure sale and obtained a certificate of title. Again, as a matter of law, River of Life purchased the lot from D W Home free of any interest that might have been claimed by Equestleader.

It is clear, then, that during the timeframe at issue (1) none of the defendants occupied the subject property without authority and (2) Equestleader had no interest in the property sufficient to support a trespass claim. Accordingly, we reverse the judgment and remand the case to the trial court, which shall enter judgment for the defendants.

Reversed and remanded with directions.

SALARIO and ROTHSTEIN-YOUAKIM, JJ., Concur.