NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DAVID L. HARKLESS,                      )
                                        )
          Appellant,                    )
                                        )
v.                                      )          Case No. 2D18-3224
                                        )
DAVID A. LAUBHAN and SUSAN W.           )
LAUBHAN,                                )
                                        )
          Appellees.                    )
_____ )

Opinion filed July 10, 2019.

Appeal from the Circuit Court for DeSoto
County; Kimberly C. Bonner, Judge.

Glenn N. Siegel of Glenn N. Siegel, P.A.,
Port Charlotte, for Appellant.

Hank B. Campbell and Hannah Dantzler-
Fleming of Campbell, Trohn, Tamayo &
Aranda, P.A., Lakeland, for Appellees.


MORRIS, Judge.

          David L. Harkless appeals from the final judgment entered in favor of

David A. Laubhan and Susan W. Laubhan on their counterclaim for a declaratory

judgment regarding the right to receive rental income pursuant to a cell tower lease.

Because we have determined that the trial court erred in concluding that the Laubhans

were bona fide purchasers without notice of Harkless's right to receive the rental income at the time they purchased the subject property, we reverse.

BACKGROUND

A majority of the underlying facts are set forth in this court's opinion from a prior appeal. Harkless v. Laubhan, 219 So. 3d 900 (Fla. 2d DCA 2016). Thus, only a brief recitation of undisputed facts is necessary here. Harkless originally entered into a cell tower lease agreement with Verizon which provided that Harkless would receive rental income in return for allowing Verizon to build a cell tower on his property. The lease itself was never recorded, but a memorandum of the lease was recorded. However, the memorandum did not mention the right to receive rental income, and it is undisputed that no written document explicitly referencing this right was ever recorded.

At the time the lease was drafted, Harkless and the Laubhans were neighbors. Mrs. Laubhan was very vocal about her objections to having the tower built and requested copies of various government paperwork in relation to a special zoning variance that was granted for the tower.

Prior to the erection of the tower, the property was sold to third parties (the Lollys) who then, in turn, sold it to the Laubhans. While the Harkless/Lolly contract specified that the buyers were aware of the lease agreement between Harkless and Verizon, noted an easement related to the lease, and provided that Harkless remained the owner of the easement and the lease, the Lolly/Laubhan contract specified only that the Laubhans were aware of the lease. The Lolly/Laubhan contract did not mention the easement, and it failed to mention anything regarding Harkless's retention of the ownership of the easement or lease. Neither the Harkless/Lolly deed nor the

2

Lolly/Laubhan deed mentioned Harkless's continued right to receive rental income from the lease, though both deeds mentioned that they were free "of all encumbrances, except . . . reservations, restrictions, and easements of record, if any."

After the Laubhans closed on their purchase of the property, the cell tower was erected, apparently over their objections. There is no dispute that the Laubhans have maintained the property, have an insurance policy on the property, and have performed all duties under the lease.

The underlying suit arose after Harkless's attempt to sell his rights under the cell tower lease to another party fell through due to the Laubhans contesting Harkless's continued right to receive rental income under the lease. Harkless brought claims for a declaratory judgment and reformation of the deeds, and the Laubhans asserted a counterclaim for declaratory judgment. The Laubhans then sought summary judgment which was granted. We reversed on appeal, concluding that there were disputed issues of fact remaining. Harkless, 219 So. 3d at 908.

After remand, the trial court conducted a hearing and ultimately entered final judgment in favor of the Laubhans on their counterclaim for declaratory judgment. The trial court concluded that the Laubhans were bona fide purchasers without notice of the lease and that, therefore, Harkless had no rights under the lease, including the right to receive rental income. In reaching that conclusion, the trial court determined that the real estate agent who had negotiated both the Harkless/Lolly and Lolly/Laubhan transactions was not a reliable source of information and thus the fact that she verbally informed the Laubhans about Harkless's retention of the right to receive income under the lease did not impose a duty on the Laubhans to inquire further. The trial court

3

determined that the Laubhans were entitled to all lease payments made by Verizon from the date of their purchase of the property and awarded them $60,718.68.

ANALYSIS

A trial court's findings of fact in an action for a declaratory judgment will be upheld if they are supported by competent, substantial evidence. Reed v. Honoshofsky, 76 So. 3d 948, 951 (Fla. 4th DCA 2011). We review a trial court's legal conclusions de novo. Id. We may not overturn such a decision unless the trial court has misapplied the law or unless the decision is against the manifest weight of the evidence or not supported by competent, substantial evidence. Williams v. Gen. Ins. Co., 468 So. 2d 1033, 1034 (Fla. 3d DCA 1985).

A party is a bona fide purchaser only when three conditions are met: (1) the purchaser obtained legal title to the challenged property, (2) the purchaser paid the value of the challenged property, and (3) the purchaser had no knowledge of the claimed interest against the challenged property at the time of the transaction. DGG Dev. Corp. v. Estate of Capponi, 983 So. 2d 1232, 1234 (Fla. 5th DCA 2008) (citing Demosthenes v. Girard, 955 So. 2d 1189, 1192 (Fla. 3d DCA 2007)). "A purchaser is not entitled to protection as a bona fide purchaser when he or she takes property with notice of an outstanding interest in the property." Id. "Successors in title take title subject to those interests of which they have notice." Id. (citing Kroitzsch v. Steele, 768 So. 2d 514, 517 (Fla. 2d DCA 2000)).

It is undisputed that the Laubhans were aware of the lease. Thus the issue here is whether they were on notice of Harkless's reservation of the right to receive rent under the lease.

4

The recording statute provides in relevant part that

> [n]o conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law.

§ 695.01(1), Fla. Stat. (2011). This statute only applies "where the subsequent purchaser is without notice." Ruotal Corp., N.W. v. Ottati, 391 So. 2d 308, 309 (Fla. 4th DCA 1980). For purposes of determining whether this statute applies, three types of notice must be considered. Actual notice arises from personal "knowledge of the fact in question." Regions Bank v. Deluca, 97 So. 3d 879, 884 (Fla. 2d DCA 2012) (quoting McCausland v. Davis, 204 So. 2d 334, 335-36 (Fla. 2d DCA 1967)). " 'Implied notice' is [a] factual inference of such knowledge, inferred from the availability of a means of acquiring such knowledge when the party charged therewith had the duty of inquiry." Id. (quoting McCausland, 204 So. 2d at 335-36). Finally, " '[c]onstructive notice' is the inference of such knowledge by operation of law, as under a recording statute." Id. (quoting McCausland, 204 So. 2d at 335-36).

Generally, there is a presumption that a subsequent purchaser acquired the title to a property in good faith and thus without notice of a prior unrecorded interest. McCahill v. Travis Co., 45 So. 2d 191, 193 (Fla. 1950) (en banc). Thus the burden of proving notice "is placed upon the party claiming" an unrecorded interest. Id. However, "[w]henever . . . a party has . . . received information, or has knowledge of such facts sufficient to put him on an inquiry," there is a rebuttable presumption of notice. Sapp v. Warner, 141 So. 124, 129 (Fla. 1932) (quoting Loomis v. Cobb, 159 S.W. 305, 307 (Tex. Civ. App. 1913)). The party may rebut the presumption by proving that he made

5

an inquiry "and did prosecute it with all the care and diligence required of a reasonably prudent man" and still "failed to discover the existence of, or to obtain knowledge of, any conflicting claim, interest, or right" in the property. Id. (quoting Loomis, 159 S.W. at 307). "What will amount to a due inquiry must largely depend upon the circumstances of each case." Id. (quoting Loomis, 159 S.W. at 307). However, if the party "fail[s] to make any inquiry or to prosecute one with due diligence to the end, the presumption remains operative, and the conclusion of a notice is absolute." Id. (quoting Loomis, 159 S.W. at 307).

Here, the Laubhans did not have personal knowledge of Harkless's reservation of the right to receive rent under the lease. The Laubhans were not parties to the Harkless/Lolly contract, nor were they privy to any conversations between Harkless and the Lollys. Thus, when they signed their own sales contract with the Lollys—which did not contain any express mention of Harkless retaining the right to receive rental income under the lease—they had no actual notice of Harkless's retention of the right to receive rental income under the lease.

The Laubhans also did not have constructive notice of Harkless's reservation of the right to receive rental income. The lease itself was not recorded. And while the memorandum and amended memorandum of lease agreement were recorded, neither of those documents mentioned Harkless's retention of the right to receive rental income even after he sold the property. Similarly, the Harkless/Lolly and Lolly/Laubhan deeds failed to expressly mention any retention by Harkless of the right to receive rental income. Thus, while the Laubhans had constructive notice of the lease

6

via the recorded memorandums of lease,[1] they did not have constructive notice of Harkless's retention of the right to receive rental income even though he no longer owned the property and even though he no longer had any obligations under the lease.

However, we conclude that the Laubhans had implied notice of Harkless's retention of the right to receive rental income. "To constitute notice of an unrecorded property interest . . . , 'the information must come from some one [sic] interested in the estate, or from some authoritative source.' " Flanigan's Enters. v. Shoppes at 18th & Comm., Inc., 954 So. 2d 758, 763 (Fla. 4th DCA 2007) (quoting Hopkins v. O'Brien, 49 So. 936, 940 (Fla. 1909)). "[V]ague reports and rumors from strangers are not a sufficient foundation on which to charge a purchaser with notice." Id. at 763-64 (quoting Hopkins, 49 So. at 940). "If believed by the finder of fact, oral testimony alone may support a finding of notice under section 695.01." Id. at 764.

"In order to charge a person with notice of a fact of which he might have learned by inquiry, the circumstances known to him must be such as should reasonably suggest inquiry and lead him to inquiry." Citizens Prop. Ins. Corp. v. European Woodcraft & Mica Design, Inc., 49 So. 3d 774, 777 (Fla. 4th DCA 2010) (quoting Sheres v. Genender, 965 So. 2d 1268, 1271 (Fla. 4th DCA 2007)). "[A] person has no right to shut his eyes or ears to avoid information, and then say that he has no notice; . . . it will

_____

[1]Cf. AHF-Bay Fund, LLC v. City of Largo, 227 So. 3d 740, 742-43 (Fla. 2d DCA 2017) (holding that where payments-in-lieu-of-taxes (PILOT) agreement was not filed in the public records but where memorandum of PILOT agreement was so filed and where it noted that the PILOT agreement imposed covenants running with the land, party was on constructive notice of the PILOT agreement when it purchased the property because the properly filed memorandum provided subsequent purchasers with facts that, had they been investigated, would have led a prudent man to discover the existence and contents of the PILOT agreement).

7

not suffice the law to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand." Id. at 777-78 (alteration in original) (quoting Sapp, 141 So. at 127); see also Crown Gen. Stores, Inc. v. Ultra Meat Market, Inc., 843 So. 2d 287, 290 (Fla. 3d DCA 2003) (rejecting argument that "information giving rise to inquiry notice" had to be precise, noting that such information does not have to "lead the purchaser to a recorded document evidencing the" claimed interest, and further explaining that "[t]he circumstances may reasonably suggest the necessity of inquiry").  If a party has knowledge such that a reasonably prudent person would make a further inquiry but no further investigation is made, the party "must suffer the consequence of his neglect." Flanigan's Enters., 954 So. 2d at 764 (first citing Chatlos v. McPherson, 95 So. 2d 506, 509 (Fla. 1957); then quoting Rafkind v. Beer, 426 So. 2d 1097, 1099 (Fla. 3d DCA 1983)).

Here, the evidence reflected that the Laubhans were provided with a copy of the lease memorandum as well as a copy of the survey.  Further, the realtor—who was involved in both the Harkless/Lolly transaction and the Lolly/Laubhan transaction— verbally informed the Laubhans about Harkless's retention of the lease, including the right to receive rental income.  This fact was admitted by both of the Laubhans.[2]  When

---

[2]The realtor testified she only mentioned Harkless retaining the lease but did not specifically mention that he was retaining the right to receive income under the lease.  However, the Laubhans both testified that the realtor explicitly told them that Harkless would be retaining the "lease money" or "the rent."  "Lease" is defined as "[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usu. rent." *Lease*, Black's Law Dictionary 1024 (10th ed. 2014).  Thus, even if the realtor did not explicitly refer to Harkless's retaining the right to receive rent or income under the lease, the Laubhans

8

the Laubhans asked the realtor how Harkless was able to retain the rental income under the lease where he no longer owned the property, the realtor told them she did not know. Despite their failure to receive an explanation for how Harkless could legally retain rights under the lease, the Laubhans apparently dismissed any concerns they had because they both admitted that they did not follow up with an attorney or seek guidance from anyone else regarding the lease, Harkless's rights thereunder, or how that affected their own property rights. The Laubhans admitted that they did not object to Harkless's reservation of the right to receive rental income under the lease before they signed the closing papers. Mr. Laubhan also admitted that because he knew there was a lease, "[t]here would be a landlord somewhere," but he did not inquire who the landlord was until the erection of the tower began. Mr. Laubhan explained that he believed that the lease belonged to the property owner. Both of the Laubhans acknowledged that at the time they purchased the property, they believed that the cell tower would never be erected. Mrs. Laubhan believed that the original zoning exception for the tower had expired, though Mr. Laubhan admitted that he was aware that Verizon and DeSoto County had been working to extend the zoning exception.[3]

---

were put on notice that Harkless would be retaining some type of consideration in return for Verizon having the right to erect the cell tower on the property.

[3]The parties dispute whether a county ordinance, adopted in late 2008, extended the special zoning exception. Due to the fact that the tower was ultimately erected, the logical deduction is that the county perceived the special zoning exception as having been extended. Yet any possible confusion about whether the ordinance extended the special zoning exception does not relieve the Laubhans of inquiring further about Harkless's reservation of the right to receive rental income under the lease. This is not a situation where the Laubhans inquired about the status of the special zoning exception and were told that that it had expired and that they, as the new property owners, had to agree to any further zoning exceptions before erection of the tower could commence. Rather, in this case, the Laubhans conducted no further inquiry, choosing

9

The trial court erred in its conclusion that the realtor was not an authoritative source of information based on the facts that she admitted that she did not prepare leases and that she could not explain how Harkless was able to retain the right to receive rental income under the lease when he no longer owned the property. While the realtor may not have been able to explain the legalities of such a transaction, she was clearly an authoritative source of the fact that was crucial to the transaction: Harkless's retention of the right to receive rent. She was personally involved in both the Harkless/Lolly transaction and the Lolly/Laubhan transaction, and she had personal knowledge that Harkless intended to retain that right. She was also instructed by the Lollys to inform the Laubhans of this fact when the Lolly/Laubhan contract was prepared. There is no requirement that a realtor must be able to explain the legal basis for a party's retention of the right to receive rent under a preexisting lease. That task would ordinarily be performed by an attorney, and the Laubhans certainly had the ability to seek clarification from an attorney if they had desired to do so.[4]

The fact that the advisements were made in the context of a casual conversation during the signing of the contract and again at closing does not detract from the testimony of the realtor and the Laubhans themselves that the Laubhans were made aware of this fact. Further, it is clear that the Laubhans did not consider these

---

instead to proceed with the property transaction based on their *assumptions* about the status of the special zoning exception and about their rights as the property owners.

[4]Indeed, it is undisputed that the sales contract explicitly advised all parties to verify all facts and representations that were important to them and to consult "an appropriate professional for legal advise [sic]" regarding the contract, the effect of laws on the transaction, the status of the title, tax questions or condition of the property, and for environmental or any "other specialized advise [sic]." The paragraph containing this language indicates that it survives the closing of the transaction.

advisements to be "offhand" because they asked the realtor for details on how Harkless was able to retain the rights under the lease. Thus that information caused the Laubhans to pause, however briefly, before proceeding with the transaction. Nevertheless, the question posed to the realtor does not constitute a diligent inquiry to the end which is required for a party to claim a status as a bona fide purchaser without notice. See Sapp, 141 So. at 129. Here, the Laubhans failed to consult an attorney despite having the ability to do so and despite being advised in writing to consult an attorney regarding any questions they had about the transaction (via the aforementioned paragraph in the sales contract), and thus their failure to receive a legal explanation for Harkless's reservation of the right to receive rental income cannot be attributed to anyone but themselves. Consequently, the Laubhans did not overcome the rebuttable presumption of notice. Instead, they ignored "sufficient red flags" and elected to proceed with the transaction without consulting anyone else regarding the lease or Harkless's reservation of rights thereunder and without objecting to the reservation prior to signing the closing documents. Cf. Kroitzsch, 768 So. 2d at 518 (holding that there were "sufficient red flags" in a residential purchase such that the buyers should have conducted a further inquiry); Flanigan's Enters., 954 So. 2d at 764 (holding that undisputed evidence established that appellant had both actual and implied notice that parking easement had been released prior to closing where appellant had been advised prior to closing about the release, where it was aware of a circuit court judgment regarding the release, and where it was in possession of a letter discussing the release). Under these circumstances, the Laubhans went forward with their eyes and ears shut to the necessary inferences arising from the facts. See Sapp,

11

141 So. at 127; Flanigan's Enters., 954 So. 2d at 764. Therefore, they were not bona fide purchasers without notice, and the trial court erred by entering a declaratory judgment in their favor.

Moreover, the trial court erred by failing to grant Harkless's request for a reformation of the deeds. Courts have the power to reform a written instrument where a mutual mistake has been made and the instrument does not accurately express the true intention or agreement of the parties. Fed. Ins. Co. v. Donovan Indus., Inc., 75 So. 3d 812, 814-15 (Fla. 2d DCA 2011) (citing Circle Mortg. Corp. v. Kline, 645 So. 2d 75, 77-78 (Fla. 4th DCA 1994)). "A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or *inadvertence*, express something different in the written instrument." Id. (quoting Kline, 645 So. 2d at 77-78). "Reformation is generally allowed against all persons except a bona fide purchaser for value and without notice." Fla. Masters Packing, Inc. v. Craig, 739 So. 2d 1288, 1290 (Fla. 4th DCA 1999) (citing Holley v. May, 75 So. 2d 696, 697 (Fla. 1954)).

Because we have concluded that the Laubhans had implied notice of Harkless's retention of the right to receive income under the lease and that they are therefore not bona fide purchasers, Harkless is entitled to reformation of the deeds. All parties to the Harkless/Lolly transaction agreed that they intended for Harkless to retain his right to receive rental income under the lease. And although the Laubhans argue on appeal that they never intended to allow Harkless to retain that right, they admitted at trial that they were verbally advised of Harkless's retention of the right to receive rental income under the lease, but they went forward with the purchase anyway. If the Laubhans intended to challenge Harkless's right to receive rental income under the

12

lease, they could have refused to sign the contract. But having the signed the contract with knowledge that Harkless was asserting his rights under the lease, the Laubhans cannot now assert their objection to defeat Harkless's right to have the deeds reformed.

The Laubhans also argue that reformation would be inequitable because the tower was built over their objections and because they have maintained the premises and performed all the duties under the lease without receiving any benefit. However, Harkless should not be denied his equitable remedy in order to relieve the Laubhans from the consequences of a bad bargain.

Therefore, we reverse the final judgment entered in favor of the Laubhans on their counterclaim for a declaratory judgment, and we remand for the trial court to enter a declaratory judgment in favor of Harkless and to reform the deeds accordingly.

Reversed and remanded.

SALARIO and BADALAMENTI, JJ., Concur.

13